**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMADA AMERICA, INC., a California corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PRECISION AMERICAN METALS, LLC., An Illinois Limited Liability Corporation, and JOHN M. MAZUREK and PAMELA F. MAZUREK, individually, | ) ) ) ) ) |
| Defendants. | ) |

## MOTION TO ENTER CONFESSION OF JUDGMENT ORDER

Plaintiff, Amada America, Inc. ("Amada"), by its attorneys, Connelly Roberts & McGivney LLC, for its Motion to Enter Confession of Judgment Order, states as follows:

1.      In July of 2006, John M. Mazurek, as President of Precision American Metals, LLC ("Precision"), executed seven separate Equipment Purchase and Security Agreements on behalf of Precision ("the Agreements"), for the purpose of procuring a number of specialized machines from Amada.

2.      The Agreements were individually and personally guaranteed by John M. Mazurek and Pamela F. Mazurek.

3.      Defendants subsequently breached the terms of the Agreements by failing to tender payment for the purchased items.

4.      On July 24, 2007, Amada filed a Complaint alleging breach of contract against Precision and the Mazureks, individually, for their failure to tender payment

under the terms of the Agreements. (A copy of Amada's Complaint is attached as Exhibit "A").

5.     On December 5, 2007, Defendants and Amada entered into a Settlement and Release Agreement. (A copy of the Settlement and Release Agreement is attached hereto as Exhibit "B").  This Settlement and Release Agreement was signed by Precision and the Mazureks individually.

6.     In the Settlement and Release Agreement, Amada agreed to accept the payment of $1,469,952.96 to satisfy the debt owed by Precision and the Mazureks. Precision and the Mazureks agreed that they were jointly and severally liable for the full satisfaction of the Settlement and Release Agreement. (see ¶ 9, Ex. B).

7.     Precision and the Mazureks issued a check for the January 2008 installment payment which was returned for insufficient funds, and Precision and the Mazureks failed to tender payment for the February 2008 installment. (A copy of the insufficient check is attached hereto as Exhibit "C").

8.     Precision and the Mazureks breached their obligations under the Settlement and Release Agreement, and are in default of the same, by:

        a)     Issuing an insufficient check for the January 2008 installment payment, and;

        b)     Failing to tender payment for the February 2008 installment.

9.     In paragraph 12 of the Settlement and Release Agreement, Defendants consented to the entry of a Confession of Judgment Order similar to the Order attached to the Settlement and Release Agreement as Exhibit B. (see ¶ 12, Ex. B).

10.    Precision and the Mazureks are liable to Amada for the full Settlement Payment as well as attorney's fees and costs pursuant to paragraph 14 of the Settlement Agreement, which states:

> "Upon an Event of Default, Defendants shall be liable to Amada for the Settlement Payment, in full, plus attorneys' fees and costs, less any amounts paid by Defendants pursuant to this Settlement Agreement. At the time of the entry of the Confession of Judgment Order, Connelly Roberts & McGivney LLC shall provide the Court with an affidavit stating the amounts previously paid by Defendants pursuant to this Agreement and the attorneys' fees incurred by Amada."
> (¶ 14, Ex. B).

11.    Simultaneously with this Motion, Amada filed a Complaint alleging breach of contract based on Precision and the Mazurek's failure to tender payment as required by the terms of the Settlement Agreement. (A copy of the Complaint is attached hereto as Exhibit "D").

12.    Attached is the Affidavit of Cory D. Anderson (the "Affidavit"), an attorney with Connelly Roberts & McGivney LLC, which states the amounts paid to Amada by Defendants, Defendants' outstanding Settlement balance and the attorney's fees and costs incurred by Amada to enforce the Settlement Agreement. (Exhibit "E").

13.    Defendants owe Amada $1,406,296.08 under the terms of the Settlement and Release Agreement. (see Ex. E).  Moreover, Amada, per the terms of the Settlement and Release Agreement, is entitled to be reimbursed by Defendants for their fees and costs associated with the enforcement of the Settlement and Release Agreement, totaling $7,150.00. (see Ex. E).

14.    Amada hereby requests this Court enforce the Settlement and Release Agreement by entering the Confession of Judgment Order against Precision American Metals, LLC, John M. Mazurek and Pamela F. Mazurek, jointly and severally.

WHEREFORE, Plaintiff, Amada America, Inc., respectfully requests that this Court:

1) Enter the Confession of Judgment Order against Precision American Metals, LLC, John M. Mazurek and Pamela F. Mazurek, jointly and severally;

2) Enter judgment for Amada America, Inc. and against Precision American Metals, LLC, John M. Mazurek and Pamela F. Mazurek, jointly and severally, in the amount of $1,413,446.08;

3) Or, in the alternative, for any other relief that this Court deems just.

Respectfully Submitted,

Amada America, Inc.,

By: /s/Cory D. Anderson
One of its Attorneys

Matthew P. Connelly
Cory D. Anderson
Connelly Roberts & McGivney LLC
55 W. Monroe St., Suite 1700
Chicago, Illinois 60603
(312)251-9600

RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUL 2 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| AMADA AMERICA, INC., a California corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| PRECISION AMERICAN METALS, LLC., An Illinois Limited Liability Corporation, and JOHN M. MAZUREK and PAMELA F. MAZUREK, individually, | ) ) ) ) ) ) |
| Defendants. | ) ) |

07 C 4177

JUDGE MORAN

MAGISTRATE JUDGE KEYS

**COMPLAINT**

Plaintiff, Amada America, Inc. ("Amada"), by its Attorneys, Connelly Roberts &

McGivney, for its Complaint against Defendants, Precision American Metals, LLC., an

Illinois Corporation ("Precision"), John M. Mazurek, an individual, and Pamela F.

Mazurek, an individual, states as follows:

**Jurisdiction**

1.    Plaintiff is a corporation with its headquarters and principle place of

business in the State of California.  Defendant Precision is a limited liability corporation

with its headquarters and principle place of business in the State of Illinois.  Upon

information and belief, the Defendants John and Pamela Mazurek are residents of the

State of Illinois.

2.    Upon information and belief, the amount in controversy, exclusive of

interest and costs, is in excess of the sum specified by 28 U.S.C. §1332.



EXHIBIT
A

## Facts

3.    Plaintiff Amada is a corporation specializing in the manufacture and sale of machine tools to the fabrication industry, with its headquarters and principle place of business at 7025 Firestone Blvd. in the city of Buena Park, California.

4.    Defendant Precision is an Illinois limited liability corporation, with its headquarters and principle place of business at 1050 Kingsland Dr., in the village of Batavia, Kane County, Illinois.

5.    Upon information and belief, Defendants John M. Mazurek and Pamela F. Mazurek are residents of the village of St. Charles, Kane County, Illinois.

6.    Sometime on or about July 20-27, 2006, Precision executed seven separate Equipment Purchase and Security Agreements ("the Agreements"), for the purpose of procuring a number of specialized machines from Amada.   The Agreements were numbered and executed as follows:

       a.   Agreement Number 14744, to purchase a Togu III Tool Grinder from Amada for the purchase price of $21,600.00.  (A copy of the Agreement is attached hereto as Exhibit A).

       b.   Agreement Number 14546, dated July 20, 2006, to purchase a Spot Welder from Amada for the purchase price of $32,000.00.  (A copy of the Agreement is attached hereto as Exhibit B).

       c.   Agreement Number 14738, to purchase an APS Software Package from Amada for the purchase price of $89,880.00.  (A copy of the Agreement is attached hereto as Exhibit C).

       d.   Agreement Number 14550, to purchase a Fabrivision Inspection Machine from Amada for the purchase price of $64,700.00.  (A copy of the Agreement is attached hereto as Exhibit D).

       e.   Agreement Number 14742, to purchase a Manipulator System from Amada for the purchase price of $122,000.00.  (A copy of the Agreement is attached hereto as Exhibit E).

f.  Agreement Number 14738, to purchase a Turret Punch Press, with Tooling Package and Scrap Conveyor, from Amada for the purchase price of $307,235.00. (A copy of the Agreement is attached hereto as Exhibit F).

g.  Agreement Number 14741, to purchase a Robotic Press Brake with Tooling Package from Amada for the total purchase price of $605,000.00. (A copy of the Agreement is attached hereto as Exhibit G).

7.   Upon information and belief, these documents were executed by Precision in the village of Batavia, Illinois.

8.   Precision paid down payments of twenty per cent of the purchase price under each Agreement, and agreed to pay the remaining amount of each Agreement in 60 equal monthly installments. (*See* Exhibits A-G).

9.   The Agreements each provide that "any payment...not received by the ninth (9th) day following the date due will be subject to a late charge of five percent (5%) of the amount due as liquidated damages." (See Exhibits A-G, Section A, ¶4).

10.   As a condition of the Agreements, Precision granted Amada security interest in the property purchased under each agreement, and executed UCC Financing Statements with the California Secretary of State, Uniform Commercial Code Division, certifying such.   (*See* Exhibits A-G, Section B, ¶1; UCC Financing Statements, 11190731, 11190774, 11190790, 11190766, 11190758, 11190723, and 11190782, attached hereto as Group Exhibit H).

<u>Count I</u>
<u>**Breach of Contract Against Precision**</u>

1-10   Plaintiff repeats and realleges paragraphs 1-8 of this Complaint as paragraphs 1-10 of this Count I, as if fully set forth herein.

3

11.     Amada has performed all of its obligations under each and every one of the Agreements by delivering the purchased machines and other equipment to Precision.

12.     Precision has legally accepted all goods delivered by Amada, as defined by §2606 of the California Commercial Code, by failing to make an effective rejection after having had a reasonable opportunity to inspect them.

13.     The first installment payment for Agreement number 14744, in the amount of $365.13, was due to Amada on October 1, 2006.  (*See* Exhibit "A")

14.     Precision failed to remit this payment, or any other required payment on Agreement number 14744, and consequently late charges were assessed in the amount of $18.26 per month, and interest compounded at a rate of 9.75% per month. (*See* "Payment History", attached hereto as Exhibit I).

15.     To date, because of its failure to remit any payment whatsoever as required by Agreement number 14744, Precision owes Amada approximately $18,919.06. (*See* Exhibit I).

16.     The first installment payment for Agreement number 14546, in the amount of $540.93, was due to Amada on October 1, 2006.  (*See* Exhibit "B").

17.     Precision failed to remit this payment, or any other required payment on Agreement number 14546, and consequently late charges were assessed in the amount of $27.05 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

18.     To date, because of its failure to remit any payment whatsoever as required by Agreement number 14546, Precision owes Amada approximately $28,028.22. (*See* Exhibit I).

4

19.     The first installment payment for Agreement number 14738, in the amount of $1,519.33, was due to Amada on May 15, 2007. (*See* Exhibit "C").

20.     Precision failed to remit this payment, or any other required payment on Agreement number 14738, and consequently late charges were assessed in the amount of $75.97 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

21.     To date, because of its failure to remit any payment whatsoever as required by Agreement number 14738, Precision owes Amada approximately $73,898.85. (*See* Exhibit I).

22.     The first installment payment for Agreement number 14550, in the amount of $1,132.57, was due to Amada on May 15, 2007. (*See* Exhibit "D").

23.     Precision failed to remit this payment, or any other required payment on Agreement number 14550, and consequently late charges were assessed in the amount of $56.63 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

24.     To date, because of its failure to remit any payment whatsoever as required by Agreement number 14550, Precision owes Amada approximately $55,087.03. (*See* Exhibit I).

25.     The first installment payment for Agreement number 14742, in the amount of $2,045.38, was due to Amada on May 15, 2007. (*See* Exhibit "E").

26.     Precision failed to remit this payment, or any other required payment on Agreement number 14742, and consequently late charges were assessed in the amount of $102.27 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

27.    To date, because of its failure to remit any payment whatsoever as required by Agreement number 14742, Precision owes Amada approximately $99,485.53. (*See* Exhibit I).

28.    The first installment payment for Agreement number 14740, in the amount of $6,437.38, was due to Amada on May 15, 2007. (*See* Exhibit "F").

29.    Precision failed to remit this payment, or any other required payment on Agreement number 14740, and consequently late charges were assessed in the amount of $321.87 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

30.    To date, because of its failure to remit any payment whatsoever as required by Agreement number 14740, Precision owes Amada approximately $313,108.10. (*See* Exhibit I).

31.    The first installment payment for Agreement number 14741, in the amount of $11,291.87, was due to Amada on May 15, 2007. (*See* Exhibit "G")

32.    Precision failed to remit this payment, or any other required payment on Agreement number 14741, and consequently late charges were assessed in the amount of $564.59 per month, and interest compounded at a rate of 9.75% per month. (*See* Exhibit I).

33.    To date, because of its failure to remit any payment whatsoever as required by Agreement number 14741, Precision owes Amada approximately $549,225.89. (*See* Exhibit I).

34.    Precision's failure to pay any of the required installments of any of the Agreements, after accepting the goods delivered by Amada constitutes a breach of the Agreements.

35.    Amada has demanded payment from Precision under the Agreements in the original total principle amount of $1,104,240.00, plus interest and late charges. (*See* Letter to John Mazurek, President of Precision Metals, dated July 20, 2007, attached hereto as Exhibit J).

36.    Despite Amada's demands, Precision has failed to make any payment whatsoever on any of the amounts due under the Agreements. (*See* Exhibit I).

37.    The total now due to Amada is approximately $1,137,752.68. (*See* Exhibit I).

38.    Each of the Agreements states that "in the event any...judicial action or proceeding is initiated with respect to any matters relating to this Agreement...the party in whose favor any award shall be given...shall be entitled to recover from the other party all costs and expenses (including attorney's fees) incurred in such action." (*See* Exhibits A-G, Section D, ¶5).

Wherefore, Plaintiff Amada America, Inc., pursuant to Section 2709 of the California Commercial Code, prays for judgment against the Defendant, Precision American Metals, LLC, in the amount of $1,137,752.68, and for prejudgment interest, costs and attorneys' fees.

## Count II
## Breach of Personal Guaranty Against John Mazurek

1-38    Plaintiff repeats and realleges paragraphs 1-38 of Count I as paragraphs 1-36 of this Count II, as if fully set forth herein.

39.    As a supplement to the Agreements, on or about July 20, 2006, Defendant John Mazurek executed a document entitled "Unconditional Continuing Guaranty" (Attached hereto as Exhibit K).    That Guaranty provides, in pertinent part, that "[g]uarantors unconditionally guaranty and promise to pay to Seller, on demand, any indebtedness of Buyer to Seller not paid when due." (*See* Exhibit K, ¶1).

40.    Amada has demanded that John Mazurek pay the amount presently due by Precision. (*See* Letter to John Mazurek, Guarantor, dated July 20, 2007, attached hereto as Exhibit L).

41.    Despite Amada's demands, and in direct breach of the Guaranty, John Mazurek has failed to make any payment whatsoever on any of the amounts due under the Agreements. (*See* Exhibit I).

42.    The Unconditional Continuing Guaranty states, in part, "[g]uarantors agree to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by [Amada] in the enforcement of this…Guaranty". (*See* Exhibit K, ¶6).

Wherefore, Plaintiff Amada America, Inc. prays for judgment against the Defendant, John M. Mazurek, in the amount of $1,137,752.68, and for prejudgment interest, costs and attorneys' fees.

## Count III
## Breach of Personal Guaranty Against Pamela Mazurek

1-42    Plaintiff repeats and realleges paragraphs 1-42 of Counts I & II as paragraphs 1-42 of this Count III, as if fully set forth herein.

43.    As a supplement to the Agreements, on or about July 20, 2006, Defendant Pamela Mazurek executed a document entitled "Unconditional Continuing Guaranty" (Attached hereto as Exhibit K).    That Guaranty provides, in pertinent part, that

"[g]uarantors unconditionally guaranty and promise to pay to Seller, on demand, any indebtedness of Buyer to Seller not paid when due." (*See* Exhibit K, ¶1).

44.    Amada has demanded that Pamela Mazurek pay the amount presently due by Precision. (*See* Letter to Pamela Mazurek, Guarantor, dated July 20, 2007, attached hereto as Exhibit M).

45.    Despite Amada's demands, and in direct breach of the Guaranty, Pamela Mazurek has failed to make any payment whatsoever on any of the amounts due under the Agreements. (*See* Exhibit I).

46.    The Unconditional Continuing Guaranty states, in part, "[g]uarantors agree to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by [Amada] in the enforcement of this...Guaranty". (*See* Exhibit K, ¶6).

Wherefore, Plaintiff Amada America, Inc. prays for judgment against the Defendant, Pamela F. Mazurek, in the amount of $1,137,752.68, and for prejudgment interest, costs and attorneys' fees.

## Count IV
## Accounting

1-46    Plaintiff repeats and realleges paragraphs 1-46 of Counts I-III as paragraphs 1-46 of this Count IV as if fully set forth herein.

47.    Each of the Agreements executed by the Defendants states that "for so long as any amounts are owed by Buyer to Seller under this Agreement, Buyer... (h) shall promptly furnish to Seller upon request current financial statements of Buyer." (See Exhibits A-G, Section B, ¶3).

48.    Amada has demanded current financial statements from Precision, but Precision has failed and refused to honor that demand, in violation of the Agreements.

WHEREFORE, Plaintiff, Amada America, Inc., respectfully prays for the entry of an Order requiring Precision to account to Amada and provide current financial statements from October 1, 2006 to the date of its accounting, and requiring Precision to continue such accounting on a monthly basis after its initial accounting.

Respectfully Submitted,

Amada America, Inc.,

By:_____
One of its Attorneys

Matthew P. Connelly
Cory D. Anderson
CONNELLY ROBERTS & McGIVNEY, L.L.C
55 W. Monroe St., Suite 1700
Chicago, Illinois 60602
312.251.9600

AGREEMENT NUMBER  1474

# AMADA AMERICA, INC.

7025 Firestone Blvd., Buena Park, CA 90621

FILING NUMBER 12901-C88

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for business only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this Agreement including without limitation the terms and conditions set forth on the reverse hereof.

**TYPE OR PRINT ONLY**

### ITEM 1 BUYER
**A. DESCRIPTION OF BUYER:**

| BUYER'S FULL NAME | | | BUYER'S TRADE NAME OR STYLE | | |
|---|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | | |

| ☐ CORPORATION | ☑ LIMITED LIABILITY CO. | | ORGANIZED UNDER THE LAWS OF THE STATE OF | AMADA CUSTOMER |
|---|---|---|---|---|
| ☐ PARTNERSHIP | ☐ PROPRIETORSHIP | ☐ OTHER | IL | 29897 |

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | (630) 406-7 |

**B. INSTALLATION SITE:**

| COMPANY NAME | BRANCH / DIVISION | | | | |
|---|---|---|---|---|---|
| SAME AS "A" | | | | | |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|
| | | | | | ( ) |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

**C. BILLING INFORMATION:**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642-7 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

**D. FOR SELLERS REFERENCE ONLY:**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | |
|---|---|---|---|---|---|
| 72 | | 922 | JOHN WOODRUFF | PAM6300601 | 06/ |

### ITEM 2 PAYMENT TERMS

| A. ☐ NET 30 DAYS | ☐ C.O.D. | ☑ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS | 60 | ) | ☐ OTHER | 9 |
|---|---|---|---|---|---|---|

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE NO. HERE |
|---|---|---|---|
| $365.13 | 10-1-06 | ☐ YES  ☐ NO | SEE SECTION A.2 ON REVERSE |

This Agreement requires that Buyer shall make each installment payment to:
**AMADA CAPITAL CORPORATION, 20691 LA PALMA, Buena Park, California 91185-2095.**

### ITEM 3 DESCRIPTION OF PROPERTY

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. ☑ NEW ☐ DEMO ☐ USED | D. MACHINE DESCRIPTION ONE (1) AMADA | | ITEM 4 PURCHASE |
|---|---|---|---|---|---|
| TOGU1H | | | TOOL GRINDER | | A. CASH PURCHASE PRICE FOR MA $21,6 |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY. | CASH PRICE | B. CASH PURCHASE PRICE FOR TOOLING |
|---|---|---|---|
| | | | |
| | | | C. |
| | | | D. TOTAL CASH PURCHASE $21,6 |
| | | | E. SALES TAX (RATE +__) |
| | | | |
| | | | |
| | | | H. SUBTOTAL (D + E + F + $21,6 |
| TOTAL TO 4B | | | I. LESS CREDIT FOR TRADE-IN |
| F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN | | J. LESS CASH DOWN PAYMENT $4, |
| | I. LESS LIENS O ALC | < > | K. SUBTOTAL (H - I - J) (C $17, |
| G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I. | J. CREDIT FOR TRADE-IN (H-I) | | L. TIME PRICE DIFFERENTIAL $4, |

### ITEM 5 CASUALTY & LIABILITY INSURANCE FOR A.10 FINANCE ONLY
| | | | M. TIME BALANCE (K + L) $21, |
|---|---|---|---|

| BUYER'S INSURANCE COMPANY | POLICY NO. |
|---|---|
| Frankenmuth Mutual | A49 974 874 |
| BUYER'S INSURANCE AGENCY | NAME OF AGENT |
| Weiss Ins | Tim Parilli |
| INSURANCE AGENCY'S ADDRESS | P.O. BOX |
| 31 W Gd Army Trail | |

| CITY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|
| Wayne | IC | 00184 | (630) 584-1717 |

[NOTE: Section D.4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.]

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BE ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AN JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash and an installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REF OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SE SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A. ABOVE) | BY | TITLE President | DATE 7 |
|---|---|---|---|

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** [...]

2. **Taxes.** [...]

3. **Freight Charges.** [...]

4. **Late Charges.** [...]

5. **Shipping Instructions.** [...]

6. **Shipment.** [...]

7. **Title, Risk of Loss and Insurance.** [...]

8. **Hauling.** [...]

9. **Installation.** [...]

10. **Warranty and Limitation of Liability.** EXCEPT AS MAY OTHERWISE BE SET FORTH IN A WRITTEN WARRANTY OF THE PROPERTY EXECUTED BY SELLER, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH OR WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL, SPECIAL, GENERAL, DIRECT OR CONSEQUENTIAL DAMAGES (INCLUDING WITHOUT LIMITATION LOST PROFITS), AND IN NO EVENT SHALL SELLER'S LIABILITY EXCEED THE PURCHASE PRICE OF THE PROPERTY.

11. [...]

12. **Force Majeure.** [...]

13. **Termination.** [...]

14. **Indemnification.** [...]

15. **Condition Precedent to Seller's Obligations.** [...]

16. **Financing.** [...]

## B. Security Interest

1. **Grant of Security Interest.** [...]

2. **Information Regarding Buyer.** [...]

3. **Certain Covenants of Buyer.** [...]

4. **Insurance.** [...]

6. **Default.** [...]

7. **Remedies on Default.** [...]

8. **Application of Proceeds.** [...]

9. **Buyer's Waiver.** [...]

10. **Financing Statements.** [...]

## C. Assignment

1. **Assignment to Amada Capital Corporation.** [...]

2. **Assignment by Buyer.** [...]

## D. Miscellaneous

1. [...]

2. **Notices.** [...]

3. **Waiver; Amendment or Modification.** [...]

4. **Court Jurisdiction.** [...]

5. **Attorneys' Fees.** [...]

6. **Severability.** [...]

7. **Entire Agreement.** [...]

8. **Time is of the Essence.** [...]

9. **Binding Effect.** [...]

10. **Headings.** [...]

DOCUMENT NUMBER 1454

**AMADA AMERI**

7025 Firestone Blvd., Buena Park, CA 90621

FILE NUMBER: 2901-CEC

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for business only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this A including without limitation the terms and conditions set forth on the reverse hereof.

TYPE OR PRINT ONLY

### ITEM 1 BUYER
**A. DESCRIPTION OF BUYER**

| BUYER'S FULL NAME | | | | BUYER'S TRADE NAME OR STYLE | | | | |
|---|---|---|---|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | | | | | |

| ☐ CORPORATION  ☑ LIMITED LIABILITY CO. | | | | ORGANIZED UNDER THE LAW OF THE STATE OF: | AMADA CUSTOMER |
|---|---|---|---|---|---|
| ☐ PARTNERSHIP  ☐ PROPRIETORSHIP  ☐ OTHER | | | | IL | 29897 |

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | ( 630 ) 406-77 |

**B. INSTALLATION SITE**

| COMPANY NAME | | | | BRANCH / DIVISION | | |
|---|---|---|---|---|---|---|
| SAME AS "A" | | | | | | |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|
| | | | | | ( ) |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

**C. BILLING INFORMATION**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642-74 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

**D. FOR SELLER'S REFERENCE ONLY**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O |
|---|---|---|---|---|---|
| 72 | 004 | 922 | JOHN WOODRUFF | PAM6300601 | 06/ |

### ITEM 2 PAYMENT TERMS

A. ☐ NET 30 DAYS  ☐ C.O.D.  ☑ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS) 60  ☐ OTHER

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE NO HERE (SEE SECTION A.2 ON REVERSE H |
|---|---|---|---|
| $540.93 | 10-1-06 | ☑ YES  ☐ NO | |

### ITEM 3 DESCRIPTION OF PROPERTY

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. | D. MACHINE DESCRIPTION: ONE (1) AMADA | A. CASH PURCHASE PRICE FOR MA |
|---|---|---|---|---|
| ID40ST | | ☑ NEW  ☐ DEMO ☐ USED | SPOT WELDER | $32,00 |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY. | CASH PRICE | |
|---|---|---|---|
| | | | B. CASH PURCHASE PRICE FOR TOOLING |
| | | | C. |
| | | | D. TOTAL CASH PURCHASE PRICE $32,00 |
| | | | E. SALES TAX (RATE + ____ % |
| | | | F. |
| | | | H. SUBTOTAL (D + E + F + G) $32,00 |
| F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN | | I. LESS CREDIT FOR TRADE-IN FR |
| | I. LESS LIENS ☐ ALC     < | > | J. LESS CASH DOWN PAYMENT $6,40 |
| G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I | J. CREDIT FOR TRADE-IN (H-I) | < > | K. SUBTOTAL (H - I - J) (CASH B $25,60 |
| | | | L. TIME PRICE DIFFERENTIAL $6,8 |
| | | | M. TIME BALANCE (K + L) $32,43 |

### ITEM 4 CASUALTY & LIABILITY INSURANCE FOR ALL FINANCE ONLY

| BUYER'S INSURANCE COMPANY | POLICY NO. CPP0001174874 |
|---|---|
| WEISS INS. | NAME OF AGENT Jim O'Reilly |
| INSURANCE AGENCY'S ADDRESS 31 W 680 ARMY TRAIL RD | P.O. BOX |
| CITY WAYNE | STATE IL | ZIP CODE 60184 | TELEPHONE 630 584 1717 |

NOTE: Section D.4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION HE ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS A INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AND JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES A SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purchase installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller to blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this A execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REPRE OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SEL SET FORTH IN THIS AGREEMENT.

| BUYER (DESCRIBED IN ITEM 1.A ABOVE) | BY | TITLE PRESIDENT | DATE 7/ |
|---|---|---|---|
| AMADA AMERICA, INC. (SELLER) | | TITLE | DATE |

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** ...

2. **Taxes.** ...

3. **Freight Charges.** ...

4. **Late Charges.** ...

5. **Shipping Instructions.** ...

6. **Shipment.** ...

7. **Title, Risk of Loss and Insurance.** ...

8. **Rigging.** ...

9. **Installation.** ...

10. **Warranty and Limitation of Liability. EXCEPT AS MAY OTHERWISE BE SET FORTH IN A WRITTEN WARRANTY OF THE PROPERTY EXECUTED BY SELLER, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, AND HEREBY EXPRESSLY DISCLAIMS ALL SUCH WARRANTIES, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL, SPECIAL, GENERAL, DIRECT OR CONSEQUENTIAL DAMAGES INCLUDING WITHOUT LIMITATION LOST PROFITS), AND IN NO EVENT SHALL SELLER'S LIABILITY EXCEED THE STATED PURCHASE PRICE OF THE PROPERTY.**

11. **Trade-Ins.** ...

12. **Force Majeure.** ...

13. **Termination.** ...

14. **Indemnification.** ...

15. **Condition Precedent to Seller's Obligations.** ...

16. **Financing.** ...

## B. Security Interest

1. **Grant of Security Interest.** ...

2. **Information Regarding Buyer.** ...

3. **Certain Covenants of Buyer.** ...

4. **Insurance.** ...

5. **Covenants Regarding Location of Property.** ...

6. **Default.** ...

7. **Remedies on Default.** ...

8. **Application of Proceeds.** ...

9. **Buyer's Waiver.** ...

10. **Financing Statements; Fixture filings and further assurances.** ...

## C. Assignment

1. **Assignment to Ameda Capital Corporation.** ...

2. **Assignment by Buyer.** ...

## D. Miscellaneous

1. ... application of Buyer payments ...

2. **Notices.** ...

3. **Waiver, Amendment or Modification.** ...

4. **Court Jurisdiction.** ...

5. **Attorneys' Fees.** ...

6. **Severability.** ...

7. **Entire Agreement.** ...

8. **Time is of the Essence.** ...

9. **Binding Effect.** ...

10. **Headings.** Headings contained in this Agreement are for purposes of convenience and not part of this Agreement.

EXHIBIT

# AMADA AMERICA, INC.

AGREEMENT NUMBER 14?

FILE NUMBER 12901-C

7025 Firestone Blvd., Buena Park, CA 90621

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for business only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this including without limitation the terms and conditions set forth on the reverse hereof.

### TYPE OR PRINT ONLY

**ITEM 1 BUYER**

**A. DESCRIPTION OF BUYER**

| BUYER'S FULL NAME | BUYER'S TRADE NAME OR STYLE |
|---|---|
| PRECISION AMERICAN METALS, LLC | |

| ☐ CORPORATION  ☑ LIMITED LIABILITY CO. | ORGANIZED UNDER THE LAWS OF THE STATE OF: IL | AMADA CUSTOM 298 |
|---|---|---|
| ☐ PARTNERSHIP  ☐ PROPRIETORSHIP  ☐ OTHER | | |

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | ( 630 ) 406- |

**B. INSTALLATION SITE:**

| COMPANY NAME | BRANCH / DIVISION |
|---|---|
| SAME AS "A" | |

| STREET ADDRESS | | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE ( ) |
|---|---|---|---|---|---|---|

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

**C. BILLING INFORMATION:**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642- |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

**D. FOR SELLERS REFERENCE ONLY**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O. D |
|---|---|---|---|---|---|
| 72 | 006 | 922 | JOHN WOODRUFF | PAM6300601 | 06 |

**ITEM 2 PAYMENT TERMS**

A. ☐ NET 30 DAYS  ☐ C.O.D.  ☑ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS 60 )  ☐ OTHER

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE NO. HERE (SEE SECTION A.2 ON REVERSE |
|---|---|---|---|
| $1,519.33 | 5-16-07 | ☑ YES  ☐ NO | |

If this Agreement is for an installment sale, Buyer shall make each installment payment to:
AMADA CAPITAL CORPORATION Dept. LA2209G, Pasadena, California 911052096

**ITEM 3 DESCRIPTION OF PROPERTY**

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. ☑ NEW ☐ DEMO ☐ USED | D MACHINE DESCRIPTION: ONE (1) AMADA |
|---|---|---|---|
| APS | | | SOFTWARE PACKAGE |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY | CASH PRICE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL TO 4B | |

| F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN | |
|---|---|---|
| | | |
| | LESS LIENS ☐ ALC | < > |

G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I.  J. CREDIT FOR TRADE-IN (H-I)

**ITEM PRICE**

| | |
|---|---|
| A. CASH PURCHASE PRICE FOR | $89,8 |
| B. CASH PURCHASE PRICE FOR TOOLING | |
| C. | |
| D. TOTAL CASH PURCHASE PRICE | $89,8 |
| E. SALES TAX (RATE + ) | |
| F. | |
| G. | |
| H. SUBTOTAL (D + E + F + G) | $89,8 |
| I. LESS CREDIT FOR TRADE-IN F | |
| J. LESS CASH DOWN PAYMENT | $17,9 |
| K. SUBTOTAL (H - I - J) (CASH | $71,9 |
| L. TIME PRICE DIFFERENTIAL (M | $19,2 |
| M. TIME BALANCE (K + L) | $91,1 |

**ITEM 4 CASUALTY & LIABILITY INSURANCE INFORMATION**

| BUYER'S INSURANCE COMPANY | Zenith Mutual | PO |
|---|---|---|
| BUYER'S INSURANCE AGENCY | Neiss Ins | NAME OF AGENT Jim Perilli |
| INSURANCE AGENCY'S ADDRESS | 31 W 630 Army Trail | P.O. BOX |

| CITY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|
| Wayne | IL | 60184 | (630) 584-1717 |

NOTE: Section D.4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BEL ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AND JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES I SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purchase installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller to blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REPI OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SEL SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A. ABOVE) | BY | TITLE President | DATE 7 |
|---|---|---|---|
| AMADA AMERICA, INC. (SELLER) | BY | TITLE | DATE |

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** [text illegible]

2. **Taxes.** [text illegible]

3. **Freight Charges.** [text illegible]

4. **Late Charges.** [text illegible]

5. **Shipping Instructions.** [text illegible]

6. **Shipment.** [text illegible]

7. **Title, Risk of Loss and Insurance.** [text illegible]

8. **Rigging.** [text illegible]

9. **Installation.** [text illegible]

10. **Warranty and Limitation of Liability.** EXCEPT AS MAY OTHERWISE BE SET FORTH IN A WRITTEN WARRANTY OF THE PROPERTY EXECUTED BY SELLER, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH OR WITHOUT LIMITATION [text illegible]

11. **Trade-In.** [text illegible]

12. **Force Majeure.** [text illegible]

13. **Termination.** [text illegible]

14. **Indemnification.** [text illegible]

15. **Condition Precedent to Seller's Obligations.** [text illegible]

16. **Financing.** [text illegible]

## B. Security Interest

1. **Grant of Security Interest.** [text illegible]

2. **Information Regarding Buyer.** [text illegible]

3. **Certain Covenants of Buyer.** [text illegible]

6. **Default.** [text illegible]

7. **Remedies on Default.** [text illegible]

8. **Application of Proceeds.** [text illegible]

9. **Buyer's Waiver.** [text illegible]

10. **Financing Statements.** [text illegible]

## C. Assignment

1. **Assignment to Amada Capital Corporation.** [text illegible]

2. **Assignment by Buyer.** [text illegible]

## D. Miscellaneous

1. [text illegible]

2. **Notices.** [text illegible]

3. **Waiver; Amendment or Modification.** [text illegible]

4. **Court Jurisdiction.** [text illegible]

5. **Attorneys' Fees.** [text illegible]

6. **Severability.** [text illegible]

7. **Entire Agreement.** [text illegible]

8. [text illegible]

9. [text illegible]

10. **Headings.** [text illegible]

EXHIBIT
D

# AMADA AMERICA, INC.

7025 Firestone Blvd., Buena Park, CA 90621

AGREEMENT NUMBER  145

FILE NUMBER  2901-CE

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for business only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this including without limitation the terms and conditions set forth on the reverse hereof.

**TYPE OR PRINT ONLY**

### ITEM 1

**A. DESCRIPTION OF BUYER**

| BUYER'S FULL NAME | BUYER'S TRADE NAME OR STYLE |
|---|---|
| PRECISION AMERICAN METALS, LLC | |

☐ CORPORATION ☑ LIMITED LIABILITY CO.
☐ PARTNERSHIP ☐ PROPRIETORSHIP ☐ OTHER _____

ORGANIZED UNDER THE LAWS OF THE STATE OF: IL    AMADA CUSTOMER 2989

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | (630) 406-7 |

**B. INSTALLATION SITE**

| COMPANY NAME | BRANCH / DIVISION |
|---|---|
| SAME AS "A" | |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|
| | | | | | ( ) |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

**C. BILLING INFORMATION**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11003 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | (678) 642-5 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

**D. FOR SELLER'S REFERENCE ONLY**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O. DA |
|---|---|---|---|---|---|
| 72 | 006 | 972 | JOHN WOODRUFF | PAM6300601 | 06 |

### ITEM 2 PAYMENT TERMS

A. ☐ NET 30 DAYS   ☐ C.O.D.   ☑ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS ____ 60 ____)   ☐ OTHER ____

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE ☐ YES ☐ NO | E. INSERT CERTIFICATE NO HERE (SEE SECTION A.2 ON REVERSE |
|---|---|---|---|
| $1,132.57 | 5-15-07 | | |

If this Agreement is for an installment sale, Buyer shall make each installment payment to:
AMADA CAPITAL CORPORATION, Dept. LA22096, Pasadena, California 91185-2096

### ITEM 3 DESCRIPTION OF PROPERTY

**A. MACHINE MODEL NO.**  FABRIVISION
**B. SERIAL NO.**
**C.** ☑ NEW  ☐ DEMO ☐ USED
**D. MACHINE DESCRIPTION ONE (1) AMADA INSPECTION MACHINE**

| A. CASH PURCHASE PRICE FOR | $64,7 |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY. | CASH PRICE |
|---|---|---|
| | | |
| | | B. CASH PURCHASE PRICE FOR TOOLING |
| | | C. $1,80 |
| FREIGHT | | $1,800.00 |
| | | D. TOTAL CASH PURCHASE PRICE $66,5 |
| | | E. SALES TAX (RATE + ____ % |
| | | F. |
| EPSA SUPERSEDES PURCHASE ORDER | | G. |
| | | H. SUBTOTAL (D + E + F + G) $66,5 |
| | TOTAL TO 4B | I. LESS CREDIT FOR TRADE-IN |
| F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN | < |
| | I. LESS LIENS CL ALC | J. LESS CASH DOWN PAYMENT $12,9 |
| G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4.I | J. CREDIT FOR TRADE-IN (H-I) | K. SUBTOTAL (H - I - J) (CASH B $53,6 |

### ITEM 4 CASUALTY & LIABILITY INSURANCE FOR INSTALLMENT SALE ONLY

| BUYER'S INSURANCE COMPANY | FRANKANMUTH MUTUAL INS | POLICY NO. 0MP1979814 |
|---|---|---|
| BUYER'S INSURANCE AGENCY | WEISS INC | NAME OF AGENT Jim Parilli |
| INSURANCE AGENCY'S ADDRESS | 31 W 680 ARMY TRAIL |
| CITY | WAYNE | STATE IL | ZIP CODE 60184 | TELEPHONE (630) 584-1717 |

L. TIME PRICE DIFFERENTIAL $

M. TIME BALANCE (K + L) $67,9

NOTE: Section 4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BEL ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS A INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AND JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES I SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purchase installment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller to blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this Ag execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REPR OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SE SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A. ABOVE) BY | TITLE Pre | DATE |
|---|---|---|
| AMADA AMERICA, INC. (SELLER) BY | TITLE | DATE |

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** [text illegible]

2. **Taxes.** [text illegible]

3. **Freight Charges.** [text illegible]

4. **Late Charges.** [text illegible]

5. **Shipping Instructions.** [text illegible]

6. **Shipment.** [text illegible]

7. **Title, Risk of Loss and Insurance.** [text illegible]

8. **Rigging.** [text illegible]

9. **Installation.** [text illegible]

10. **Warranty and Limitation of Liability.** [text illegible]

11. **Trade-Ins.** [text illegible]

12. **Force Majeure.** [text illegible]

13. **Termination.** [text illegible]

14. **Indemnification.** [text illegible]

15. **Condition Precedent to Seller's Obligations.** [text illegible]

16. **Financing.** [text illegible]

## B. Security Interest

1. **Grant of Security Interest.** [text illegible]

2. **Information Regarding Buyer.** [text illegible]

3. **Certain Covenants of Buyer.** [text illegible]

4. **Insurance.** [text illegible]

5. **Covenants Regarding Location of Property.** [text illegible]

6. **Default.** [text illegible]

7. **Remedies on Default.** [text illegible]

8. **Application of Proceeds.** [text illegible]

9. **Buyer's Waiver.** [text illegible]

10. **Financing Statements; Fixture filings and further assurances.** [text illegible]

## C. Assignment

1. **Assignment to Amada Capital Corporation.** [text illegible]

2. **Assignment by Buyer.** [text illegible]

## D. Miscellaneous

1. The order of application of Buyer payments [text illegible]

2. **Notices.** [text illegible]

3. **Waiver; Amendment or Modification.** [text illegible]

4. **Court Jurisdiction.** [text illegible]

5. **Attorneys' Fees.** [text illegible]

6. **Severability.** [text illegible]

7. **Entire Agreement.** [text illegible]

8. **Time is of the Essence.** [text illegible]

9. **Binding Effect; Subject to Part C of this Agreement** [text illegible]

10. **Headings.** [text illegible]

EXHIBIT

# AMADA AMERICA, INC.

7025 Firestone Blvd., Buena Park, CA 90621

AGREEMENT NUMBER 147

FILE NUMBER 12901-CE

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for busine only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this including without limitation the terms and conditions set forth on the reverse hereof.

**TYPE OR PRINT ONLY**

### ITEM 1. BUYER

**A. DESCRIPTION OF BUYER**

| BUYER'S FULL NAME | | BUYER'S TRADE NAME OR STYLE |
|---|---|---|
| PRECISION AMERICAN METALS, LLC | | |

| ☐ CORPORATION ☑ LIMITED LIABILITY CO | ORGANIZED UNDER THE LAWS OF THE STATE OF: | IL | AMADA CUSTOMER 2989 |
|---|---|---|---|
| ☐ PARTNERSHIP ☐ PROPRIETORSHIP ☐ OTHER | | | |

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | ( 630 ) 406-7 |

**B. INSTALLATION SITE**

| COMPANY NAME | BRANCH / DIVISION |
|---|---|
| SAME AS "A" | |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE ( ) |
|---|---|---|---|---|---|
| | | | | | |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

**C. BILLING INFORMATION**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642-7 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-L | DICK CLARK |

**D. FOR SELLER'S REFERENCE ONLY**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O. DA |
|---|---|---|---|---|---|
| 72 | 005 | 922 | JOHN WOODRUFF | PAM6300601 | 06/ |

### ITEM 2. PAYMENT TERMS

A. ☐ NET 30 DAYS  ☐ C.O.D.  ☑ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS  60 )  ☐ OTHER  9

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE |
|---|---|---|---|
| $2,045.38 | 5-16-07 | ☑ YES ☐ NO | NO HERE (SEE SECTION A2 ON REVERSE |

If this Agreement is for an installment sale, Buyer shall make each installment payment to:
AMADA CAPITAL CORPORATION, Dept. LA22096, Pasadena, California 91185-2096

### ITEM 3. DESCRIPTION OF PROPERTY

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. ☑ NEW ☐ DEMO ☐ USED | D. MACHINE DESCRIPTION: ONE (1) AMADA |
|---|---|---|---|
| MP1225NJ | | | MANIPULATOR SYSTEM |

| | ITEM 4. PRICE |
|---|---|
| A. CASH PURCHASE PRICE FOR IT | $121,00 |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY. | CASH PRICE |
|---|---|---|
| | | |

B. CASH PURCHASE PRICE FOR TOOLS

C.

D. TOTAL CASH PURCHASE PRICE
$121,00

E. SALES TAX (RATE + ___ %

F.

G.

H. SUBTOTAL (D + E + F + G)
$121,00

| TOTAL TO 4B | |
|---|---|

| F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN |
|---|---|
| | I. LESS LIENS ☐ ALC |

I. LESS CREDIT FOR TRADE IN FI
<

J. LESS CASH DOWN PAYMENT.
$24,2

| G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I. | J. CREDIT FOR TRADE-IN (H-I) |
|---|---|

K. SUBTOTAL (H - I, - J) (CASH B/
$96,8

### ITEM 5. CASUALTY & LIABILITY INSURANCE FOR ALL FINANCE ONLY

| BUYER'S INSURANCE COMPANY | FRANKENMUTH MUTUAL | POLICY NO. 974874 |
|---|---|---|
| BUYER'S INSURANCE AGENCY | WEISS INS. | NAME OF AGENT JOY PARILLI |
| INSURANCE AGENCY'S ADDRESS | 31 W 680 ARMY TRAIL | P.O. BOX |
| CITY WAYNE | STATE IL | ZIP CODE 60184 | TELEPHONE 630 584-7717 |

L. TIME PRICE DIFFERENTIAL (M.
$25,9

M. TIME BALANCE (K. + L.)
$122,77

NOTE: Section B.4 on the reverse hereof sets forth certain insurance requirements to be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BEL ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS A INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AND JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES I SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purchase installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller to blank, including without limitation the date of first payment in Item 2C, and correct any typographical or other error on the facing page of this Ag execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REPR OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A. ABOVE) | BY | TITLE President | DATE 7/ |
|---|---|---|---|
| | | TITLE | DATE |

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** The cash purchase price of the Property is FOB point of shipment from within the United States as designated by Seller ...

2. **Taxes.** The cash purchase price of the Property is exclusive of any and all excise, sales, use or other taxes levied by any federal, state, county, municipal or other governmental authorities ...

3. **Freight Charges.** Freight charges for shipment of the Property to Buyer, including taxes on freight charges, if any, are for the account of Buyer and will be billed freight collect ...

4. **Late Charges.** Any payment of Buyer not received by the ninth (9th) day following the date due will be subject to a late charge of five percent (5%) of the amount due as liquidated damages.

5. **Shipping Instructions.** Seller will arrange for shipment and routing of the Property in accordance with the instructions of Buyer ...

6. **Shipment.** Seller may ship the Property in partial shipments. Seller will use reasonable commercial efforts to deliver the Property by the requested delivery date ...

7. **Title, Risk of Loss and Insurance.** Title to and all risk of loss or of damage to the Property will pass from Seller to Buyer at the shipping point ...

8. **Rigging.** All costs of unloading the Property from the carrier upon arrival at the shipping destination and moving the Property to the installation site are for the account of Buyer ...

9. **Installation.** Buyer will, at its expense, take all necessary steps to prepare the installation site for the installation of the Property ...

10. **Warranty and Limitation of Liability. EXCEPT AS MAY OTHERWISE BE SET FORTH IN A WRITTEN WARRANTY OF THE PROPERTY EXECUTED BY SELLER, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY** ...

11. **Trade-Ins.** Buyer represents and warrants to Seller that Buyer has good and marketable title to any trade-in, referred to in Item 3.F on the facing page hereof ...

12. **Force Majeure.** In the event that Seller or any of its suppliers or delegatees is unable to carry out Seller's obligations hereunder due to acts of God or of the public enemy, war, insurrection, riots, strikes, lockouts, labor disputes, fires, floods, earthquakes, natural disasters ...

13. **Termination.** Upon the occurrence of an Event of Default (as defined in Section B.6), Seller will, in addition to the other rights set forth in this Agreement, have the right to immediately terminate this Agreement as to any un-shipped Property with or without notice of termination.

14. **Indemnification.** Buyer will defend, indemnify and hold Seller harmless from and against any and all claims, liabilities, damages, costs and expenses (including reasonable attorney's fees) arising out of or in connection with any one of the Property by Buyer or any breach of this Agreement by Buyer.

15. **Condition Precedent to Seller's Obligations.** On all Installment sales the written approval of ACC for such other financing company as may be involved) to the terms of this Agreement is a condition precedent to the performance of Seller's obligations under this Agreement ...

16. **Financing.** Buyer has sole responsibility for obtaining any necessary financing for the purchase of the Property. Any efforts of Seller to arrange any such financing are solely an accommodation to Buyer and do not obligate Seller in any way.

## B. Security Interest

1. **Grant of Security Interest.** To secure payment of the purchase price of the Property, Buyer hereby grants to Seller security interest in the Property and in all accessions thereto and replacements or modifications thereof ...

2. **Information Regarding Buyer.** Buyer represents and warrants to Seller that all of the information regarding Buyer set forth on the facing page of this Agreement is true and correct.

3. **Certain Covenants of Buyer.** For so long as any amounts are owed by Buyer to Seller under this Agreement, Buyer (a) shall use the Property in compliance with all applicable laws, regulations and ordinances ...

4. **Insurance.** Buyer shall keep the Property insured against all risk of loss or damage from any cause whatsoever for which insurance is commercially available ...

5. **Covenants Regarding Location of Property.** Buyer will not remove any of the Property from the location at which installed or otherwise change the location of any of the Property without consent of Seller in writing ...

6. **Default.** The occurrence of any of the following shall constitute an Event of Default by Buyer in the payment, when due or payable of the purchase price of the Property ...

7. **Remedies on Default.** Upon the occurrence of an Event of Default, or at any time that an Event of Default shall be continuing, in addition to any other rights or remedies Seller is or shall have any or all of the following rights and remedies ...

8. **Application of Proceeds.** The net proceeds realized upon any liquidation of the Property, after deduction for the expenses of retaking, holding, preparing for sale or leasing and the like, and the reasonable attorney's fees and legal expenses and court costs ...

9. **Buyer's Waiver.** Except as to the notice of intention to dispose of Property provided Seller may exercise any of its rights and remedies without demand, advertisement or notice ...

10. **Financing Statements.** Fixture filings and further assurances. Buyer hereby authorizes and directs Seller to execute and file on behalf of and in the name of Buyer ...

## C. Assignment

1. **Assignment to Amada Capital Corporation.** Unless otherwise agreed by the parties, Seller may at any time assign this Agreement and its rights hereunder, in whole or in part ...

2. **Assignment by Buyer.** Buyer may not assign, delegate or transfer any of its rights under this Agreement to any third party without the prior written consent of Seller.

## D. Miscellaneous

1. The order of application of Buyer payments is at the discretion of Seller. Seller may apply any or all of a Buyer's payment to any outstanding balances owing by Seller ...

2. **Notices.** All notices, demands or consents required or permitted to be given under this Agreement shall be in writing and shall be deemed effective upon delivery if personally delivered or three days after ...

3. **Waiver, Amendment or Modification.** No waiver, amendment or modification hereof or of any right or remedy hereunder shall be effective unless in writing and signed to be bound. No failure by Seller to exercise, and no delay by Seller in exercising, any remedy granted hereunder shall operate as a waiver of any such right, power or remedy, nor shall any right or remedy by Seller on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All rights and remedies of Seller are separate and the exercise of any right or remedy shall not limit or prejudice the exercise of any other remedy.

4. **Court Jurisdiction.** Any controversy, claim, action or dispute arising out of or in connection with or related to the laws of the State of California and the parties hereto matters being adjudicated in the jurisdiction of California.

5. **Attorneys' Fees.** In the event any arbitration or judicial action or proceeding is instituted by any matters relating to this Agreement or in the event either party seeks relief from of 11 U.S.C. Section 362 (or any successor statute thereto), then the party in whose favor award shall be given or any relief shall be granted or judgment shall be entered shall be recover from the other party all costs and expenses (including attorneys' fees) incurred in the proceeding and any appeal therefrom.

6. **Severability.** In the event any provision or portion of any provision of this Agreement by a court of competent jurisdiction to be unenforceable or invalid, the remaining provisions thereof shall remain in full force and effect.

7. **Entire Agreement.** Notwithstanding any purchase order submitted by Buyer with on the facing page hereof or attached hereto, this Agreement constitutes the entire agreement between Buyer and Seller pertaining to the subject matter hereof. Any and all agreements or understandings heretofore existing between the parties pertaining to thereof are expressly superseded and canceled by this Agreement.

8. **Time is of the Essence.** Except as to the provisions of this Agreement relating to and shipping delays, time is of the essence with respect to each of the terms, conditions and covenants of this Agreement.

9. **Binding Effect.** Subject to Part C of this Agreement, this Agreement shall be binding and inure to the benefit of the parties and their legal representatives, successors and assigns.

10. **Headings.** Headings contained in this Agreement are for purposes of convenience only and do not form a part of this Agreement.

EXHIBIT

# AMADA AMERICA, INC.

7025 Firestone Blvd., Buena Park, CA 90621

AGREEMENT NUMBER  147

FILE/
NUMBER  D901-CK

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A. below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for business only the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in this including without limitation the terms and conditions set forth on the reverse hereof.

**TYPE OR PRINT ONLY**

### A. DESCRIPTION OF BUYER

| BUYER'S FULL NAME | | BUYER'S TRADE NAME OR STYLE |
|---|---|---|
| PRECISION AMERICAN METALS, LLC | | |

☐ CORPORATION ☒ LIMITED LIABILITY CO.
☐ PARTNERSHIP ☐ PROPRIETORSHIP ☐ OTHER

| | ORGANIZED UNDER THE LAWS OF THE STATE OF: | IL | AMADA CUSTOM 2989 |
|---|---|---|---|

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | IL | IL | 60510 | ( 630 ) 406-7 |

### B. INSTALLATION SITE:

| COMPANY NAME | | BRANCH / DIVISION |
|---|---|---|
| SAME AS "A" | | |

| STREET ADDRESS | | | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| | | | | | | ( ) |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK |

### C. BILLING INFORMATION

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642-7 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

### D. FOR SELLER'S REFERENCE ONLY

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O. |
|---|---|---|---|---|---|
| 72 | 001 | 922 | JOHN WOODRUFF | PAM6300601 | 06/ |

## ITEM 2. PAYMENT TERMS

A. ☐ NET 30 DAYS  ☐ C.O.D.  ☒ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS) 60    ☐ OTHER    9

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE NO. HERE (SEE SECTION 2.4 ON REVERSE) |
|---|---|---|---|
| $6,437.38 | 5-15-07 | ☒ YES  ☐ NO | |

If this Agreement is for an installment sale, Buyer shall make each installment payment to:
AMADA CAPITAL CORPORATION, Dept. LA22096, Pasadena, California 91185-2096

## ITEM 3. DESCRIPTION OF PROPERTY

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. ☒ NEW ☐ DEMO ☐ USED | D. MACHINE DESCRIPTION: ONE (1) AMADA | ITEM 4. PRICE |
|---|---|---|---|---|
| EM2510NT | | | TURRET PUNCH PRESS | A. CASH PURCHASE PRICE FOR M $307,23 |

| E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY. | CASH PRICE | |
|---|---|---|---|
| | | | B. CASH PURCHASE PRICE FOR TOOLING $73,58 |
| | | | C. |
| TOOLING PACKAGE ($88000) | | $66,880.00 | D. TOTAL CASH PURCHASE PRICE $380,82 |
| SCRAP CONVEYOR | | $6,705.00 | E. SALES TAX (RATE + ____ % |
| | | | F. |
| | | | G. |
| | TOTAL TO 4B | $73,585.00 | H. SUBTOTAL (D + E + F + G) $380,82 |

| F. DESCRIBE TRADE-IN | | H. VALUE OF TRADE-IN | | I. LESS CREDIT FOR TRADE-IN FR |
|---|---|---|---|---|
| | | I. LESS LIENS O A/C < > | | J. LESS CASH DOWN PAYMENT $76,16 |
| G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I. | | J. CREDIT FOR TRADE-IN (H-I) | | K. SUBTOTAL (H - I - J) (CASH BA $304,65 |

## ITEM 5. CASUALTY & LIABILITY INSURANCE FOR ALL PURCHASES

| BUYER'S INSURANCE COMPANY | FRANKENMUTH MUTUAL | POLICY NO. 2011976874 | L. TIME PRICE DIFFERENTIAL (+ $81,58 |
|---|---|---|---|
| BUYER'S INSURANCE AGENCY | WEISS INS. | NAME OF AGENT JIM PARNI | |
| INSURANCE AGENCY'S ADDRESS | 31 N 680 ARMY TRAIL RD. | | M. TIME BALANCE (K + L) $386,24 |
| CITY | WAYNE | STATE IL | ZIP CODE 60184 | TELEPHONE (630) 584-1717 | |

NOTE: Section D.4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BEL ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS A INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AND JURISDICTION PROVISIONS SET FORTH IN SECTION D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES IN SELLER A SECURITY INTEREST IN THE PROPERTY.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purchase installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Seller to blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this Ag execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REPRE OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SELL SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A. ABOVE) | BY | [signature] | TITLE Presiden | DAT |
|---|---|---|---|---|
| AMADA AMERICA, INC. ("SELLER") | BY | | TITLE | |

A. Terms and Conditions of Sale

**EXHIBIT**

**G**

**AMADA AMERICA, INC.**

REFERENCE NUMBER  14

7025 Firestone Blvd., Buena Park, CA

NUMBER /290/-CE

# EQUIPMENT PURCHASE AND SECURITY AGREEMENT

Buyer (described in Item 1.A, below) agrees to purchase from AMADA AMERICA, INC. ("Seller") and Seller agrees to sell to Buyer for bus only, the equipment and other personal property described in Item 3, below ("Property"), on the terms and conditions set forth in th including without limitation the terms and conditions set forth on the reverse hereof.

**TYPE OR PRINT ONLY**

**ITEM 1. BUYER**

**A. DESCRIPTION OF BUYER**

| BUYER'S FULL NAME | | | | BUYER'S TRADE NAME OR STYLE | | |
|---|---|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | | | |

☐ CORPORATION  ☒ LIMITED LIABILITY CO.  ☐ PARTNERSHIP  ☐ PROPRIETORSHIP  ☐ OTHER

ORGANIZED UNDER THE LAWS OF THE STATE OF ▶ IL

AMADA CUSTO 29

| STREET ADDRESS OF BUYER'S CHIEF EXECUTIVE OFFICE | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 1050 KINGSLAND DR. | | BATAVIA | | IL | 60510 | ( 630 ) 406 |

**B. INSTALLATION SITE:**

| COMPANY NAME | | BRANCH / DIVISION | | | | |
|---|---|---|---|---|---|---|
| SAME AS "A" | | | | | | |

| STREET ADDRESS | | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| | | | | | | ( ) |

| REQUEST DELIVERY DATE | SHIPPING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT | |
|---|---|---|---|---|
| | FOB SHIPPING POINT | | JOHN MAZUREK | |

**C. BILLING INFORMATION**

| BILLING ADDRESS | P.O. BOX | CITY | COUNTY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|---|---|---|
| 11005 PINEHIGH DR. | | ALPHARETTA | | GA | 30022 | ( 678 ) 642 |

| BILLING INSTRUCTIONS | AMADA CUSTOMER NUMBER | CONTACT |
|---|---|---|
| | 29897-1 | DICK CLARK |

**D. FOR SELLER'S REFERENCE ONLY**

| REGION NO. | DIVISION NO. | SALESMAN NO. | SALESMAN NAME | CUSTOMER P.O. NO. | P.O. |
|---|---|---|---|---|---|
| 72 | 011 | 922 | JOHN WOODRUFF | PAM6300601 | 0 |

**ITEM 2. PAYMENT TERMS**

A. ☐ NET 30 DAYS  ☐ C.O.D.  ☒ MONTHLY INSTALLMENTS (TOTAL NO. OF PAYMENTS 60 )  ☐ OTHER

| B. AMOUNT OF EACH MONTHLY INSTALLMENT | C. DUE DATE OF FIRST INSTALLMENT (TO BE COMPLETED BY SELLER) | D. TAX EXEMPT PURCHASE | E. INSERT CERTIFICATE NO. HERE (SEE SECTION A.2 OF REVER |
|---|---|---|---|
| $11,291.87 | 5-15-07 | ☒ YES  ☐ NO | |

If this Agreement is for an installment payment purchase, Buyer shall make each installment payment to: AMADA CAPITAL CORPORATION, Dept. LA21096, Pasadena, California 91185-2096.

**ITEM 3. DESCRIPTION OF PROPERTY**

| A. MACHINE MODEL NO. | B. SERIAL NO. | C. ☒ NEW ☐ DEMO ☐ USED | D. MACHINE DESCRIPTION: ONE (1) AMADA | QTY | CASH PRICE |
|---|---|---|---|---|---|
| HDS1030NTR | | | ROBOTIC PRESS BRAKE | | |

| A. CASH PURCHASE PRICE FOR $605,0 |
|---|
| B. CASH PURCHASE PRICE FOR TOOLI $63,0 |

E. TOOLING, ATTACHMENTS, OPTIONS AND OTHER ADDITIONS (INCLUDING SPECIFICATIONS) | QTY | CASH PRICE

C.

| TOOLING PACKAGE ($70,000) | | $63,000.00 |

D. TOTAL CASH PURCHASE PRIC $668,0

E. SALES TAX (RATE + ___

F.

G.

| | TOTAL TO 4B | $63,000.00 |

H. SUBTOTAL (D + E + F + G) $668,0

F. DESCRIBE TRADE-IN | H. VALUE OF TRADE-IN

I. LESS CREDIT FOR TRADE-IN
<

I. LESS LIENS ☐ ALC <  >

J. LESS CASH DOWN PAYMENT $133,0

G. CALCULATE CREDIT FOR TRADE-IN ABOVE AND INSERT IN ITEM 4I. | J. CREDIT FOR TRADE-IN (H-I)

K. SUBTOTAL (H - I - J) (CASH $534,0

**ITEM 4. CASUALTY & LIABILITY INSURANCE FOR ALC FINANCE ONLY**

| BUYER'S INSURANCE COMPANY | POLICY |
|---|---|
| FRANKENMUTH MUTUAL | 892 974 874 |

L. TIME PRICE DIFFERENTIAL (I $143,1

| BUYER'S INSURANCE AGENCY | NAME OF AGEN |
|---|---|
| WEISS INS. | Guy Angelí |

| INSURANCE AGENCY'S ADDRESS | P.O. BOX |
|---|---|
| 31 W 680 ARMY Trail RD | |

M. TIME BALANCE (K + L) $677,5

| CITY | STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|
| WAYNE | IL | 60184 | (630 584 1717 |

NOTE: Section D.4 on the reverse hereof sets forth certain requirements for insurance which must be provided by Buyer. Please review these requirements carefully with your insurance provider.

Buyer agrees to the terms and conditions set forth herein and on the reverse side of this Agreement. BY ITS EXECUTION BE ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS INCLUDING WITHOUT LIMITATION THE WARRANTY DISCLAIMERS AND LIMITATION OF LIABILITY SET FORTH IN SECTION A.10, AN JURISDICTION PROVISIONS SET FORTH IN SECTIONS D.4, RESPECTIVELY, AND UNDERSTANDS THAT THE AGREEMENT CREATES SELLER A SECURITY INTEREST IN THE EQUIPMENT.

If Buyer has elected to purchase the Property on an installment payment basis, Buyer acknowledges that Seller has offered both a cash purch installment payment purchase price to Buyer and that Buyer has made its election based on a comparison of these prices. Buyer authorizes Selle blank, including without limitation the date of first payment in Item 2.C, and correct any typographical or other error on the facing page of this A execution of this Agreement by Buyer.

This Agreement shall not be binding upon Seller until executed by a duly authorized officer or manager of Seller in Buena Park, California. NO REP OR WARRANTY RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS BINDING ON OR ENFORCEABLE AGAINST SE SET FORTH IN THIS AGREEMENT.

| BUYER (IDENTIFIED IN ITEM 1.A, ABOVE) | BY | TITLE PRESIDENT | DATE 7- |
|---|---|---|---|
| AMADA AMERICA, INC. (SELLER) | BY | TITLE | DA |

REV. 1/03 BE

## A. Terms and Conditions of Sale

1. **Price and Price Adjustments.** The cash purchase price of the Property is FOB point of shipment from within the United States as designated by Seller, and is firm for thirty (30) days after the date of execution of this Agreement by Seller. After such period Seller may, in its discretion, adjust the purchase price of any unshipped Property to reflect cost increases and changes in market conditions. Seller will give Buyer written notice of any such price adjustments. Unless within seven (7) days after receiving such notice Buyer gives Seller written notice of any objections to any such price adjustment, Buyer will be deemed to have waived all such objections.

2. **Taxes.** The cash purchase price of the Property is exclusive of any and all excise, sales, use or other taxes levied by any federal, state, county, municipal or other governmental authority, all of which are for the account of Buyer. Seller is authorized to make payment of any such taxes directly to the taxing authority, and Buyer will reimburse Seller therefor. Such reimbursement will be made on demand unless otherwise expressly agreed in writing. If Buyer claims an exemption from such taxes, Buyer must provide evidence of such exemption acceptable to Seller.

3. **Freight Charges.** Freight charges for shipment of the Property to Buyer, including taxes on freight charges, if any, are for the account of Buyer and will be billed freight collect. Freight charges for loading and accessorials will be separately invoiced to Buyer and are payable net 30 days from the date of invoice unless otherwise agreed in writing.

4. **Late Charges.** Any payment of Buyer not received by the ninth (9th) day following the date due will be subject to a late charge of five percent (5%) of the amount due as liquidated damages.

5. **Shipping Instructions.** Seller will arrange for shipment and routing of the Property in accordance with the instructions of Buyer (if any) set forth on facing page hereof; provided however, if such instructions are unclear, incomplete or impractical of implementation, or if no shipping instructions are set forth on the facing page hereof, Seller may, and is hereby authorized by Buyer, to arrange for shipment and routing of the Property as Seller deems appropriate. In no event will Seller be liable for any failure of the carrier to follow shipping instructions of either Buyer or Seller. Charges will be billed freight collect.

6. **Shipment.** Seller may ship the Property in partial shipments. Seller will use reasonable commercial efforts to deliver the Property by the requested delivery date, set forth on the facing page hereof, but will have no liability to Buyer for late shipments.

7. **Title, Risk of Loss and Insurance.** Title to and all risk of loss of or damage to the Property will pass from Seller to Buyer at the shipping point. Unless otherwise expressly agreed in writing, the cost of insurance on the Property while in transit will be borne by Buyer.

8. **Rigging.** All costs of unloading the Property from the carrier upon arrival at the shipping destination and moving the Property to the installation site are for the account of Buyer. Seller has no liability for the Rigger and bears no measure of risk of damage to or loss of the Property occurring in connection with unloading and moving.

9. **Installation.** Buyer will, at its expense, take all necessary steps to prepare the installation site for the installation of the Property. The cost of installation is included in the purchase price of the Property. Installation includes set up, start up and initial adjustment of operating performance. Seller will file instructions of Buyer (if any) set forth on facing page hereof; provided however, if such instructions are unclear, incomplete or impractical of implementation, or if no shipping instructions are set forth on the facing page hereof, Seller may, and is hereby authorized by Buyer, to arrange for shipment and routing of the Property as Seller deems appropriate. In no event will Seller be liable for any failure of the carrier to follow shipping instructions of either Buyer or Seller. Charges will be billed freight collect.

10. **Warranty and Limitation of Liability.** EXCEPT AS MAY OTHERWISE BE SET FORTH IN A WRITTEN WARRANTY OF THE PROPERTY EXECUTED BY SELLER, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH REGARD TO THE PROPERTY AND HEREBY EXPRESSLY DISCLAIMS ALL SUCH WARRANTIES, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL, SPECIAL, GENERAL, DIRECT OR CONSEQUENTIAL DAMAGES (INCLUDING WITHOUT LIMITATION LOST PROFITS), AND IN NO EVENT SHALL SELLER'S LIABILITY EXCEED THE STATED PURCHASE PRICE OF THE PROPERTY.

11. **Trade-Ins.** Buyer represents and warrants to Seller that Buyer has good and marketable title to any trade-in, released to Seller and that any such trade-in is in good operable condition and will be transferred to Seller free and clear of all claims, liens, charges, security interests or encumbrances of any third party. In the event that subsequent to such transfer any third party, including without limitation Amada Capital Corporation ("ACC"), asserts a lien on any interest in such trade-in, Buyer hereby agrees to defend a license to store any such trade-in on Buyer's premises until such trade-in may be conveniently moved or resold, and Buyer will indemnify and hold Seller harmless from any loss or damage to such trade-in and any claims against Seller arising out of such storage or any unauthorized conversion of such trade-in.

12. **Force Majeure.** In the event that Seller or any of its suppliers or delegates is unable to carry out Seller's obligations hereunder due to acts of God or of the public enemy, war, insurrection, riots, strikes, lockouts, labor disputes, fires, floods, earthquakes, natural disasters, unavoidable casualty, freight embargoes, shortages of labor or material, curtailment of governmental policy, labor or regulations (including but not limited to money exchange or transfer restrictions, impositions of quotas or limitation of shipments), or any other causes or causes beyond the control of Seller or its suppliers or delegates, whether or not specified above, Seller may extend the time of performance of its obligations to such extent as may be necessary to enable Seller and its suppliers and delegates to complete performance with the exercise of reasonable diligence after the cause or causes of delay have been removed. In the event any such delay continues for a period of more than six (6) months, either party may terminate its obligations hereunder by so notifying the other party in writing.

13. **Termination.** Upon the occurrence of an Event of Default (as defined in Section B.6), Seller will, in addition to the other rights set forth in this Agreement, have the right to immediately terminate this Agreement as to any un-shipped Property with or without notice of termination.

14. **Indemnification.** Buyer will defend, indemnify and hold Seller harmless from and against any and all claims, liabilities, damages, costs and expenses (including reasonable attorney's fees) arising out of or in connection with any use of the Property by Buyer or as a third party in this Agreement by Buyer.

15. **Condition Precedent to Seller's Obligations.** On all installment sales the written approval of ACC for each other financing company as may be involved in the terms of this Agreement is a condition precedent to the performance of Seller's obligations under this Agreement, and one of the Property delivered to Buyer prior to the obtaining of such written approval will be deemed to be held by Buyer as a bailee for its own benefits under a bailment revocable at will by Seller.

16. **Financing.** Buyer has sole responsibility for obtaining any necessary financing for the purchase of the Property. Any efforts of Seller to arrange any such financing are solely an accommodation to Buyer and do not obligate Seller in any way.

## B. Security Interest

1. **Grant of Security Interest.** To secure payment of the purchase price of the Property, Buyer hereby grants to Seller a security interest in the Property, and in all accessions thereto and replacements or modifications thereof, as well as all proceeds (including insurance proceeds) of the foregoing. The security interest granted hereby constitutes a purchase money security interest under the California Uniform Commercial Code. In addition, the security interest granted hereby shall secure the full and faithful performance by Buyer and all of Buyer's obligations under this Agreement. Notwithstanding the foregoing, the provisions of this Part B do not apply with respect to COD sales of Property for which payment is actually received by Seller from Buyer prior to or at the time of delivery of the Property to Buyer's facility.

2. **Information Regarding Buyer.** Buyer represents and warrants to Seller that all of the information regarding Buyer set forth on the facing page of this Agreement is true and correct.

3. **Certain Covenants of Buyer.** For so long as any amounts are owed by Buyer to Seller under this Agreement, Buyer will shall use the Property in compliance with all applicable laws, regulations and ordinances; (b) shall maintain the Property in good condition and repair, reasonable wear and tear excepted; (c) shall pay when due all taxes, charges and liquidation on the Property or the ownership, use, disposition or sale of same; (d) shall keep the Property free of all liens, charges, claims, security interests and encumbrances of any third party; (e) shall permit Seller to inspect the Property, and Buyer's books and records of any financial statements, during normal business hours; (f) at the request of any creditors of any party whose title interest is senior to that of Seller, subordinate its title interest in such Property to the interest of such party; (g) shall promptly notify Seller of the occurrence of any events which materially and adversely affect the value of the Property hereunder; (h) shall promptly notify Seller in writing of any change of Buyer's legal name or any tradename or style, the form in which Buyer conducts its business, and the organizational or financial structure of Buyer; (h) shall promptly furnish to Seller upon request current financial statements of Buyer; and (i) shall not, without prior written consent of Seller, sell, assign, and lease, hire, lend, license the use of or pledge, encumber, grant a security interest in or dispose of the Property or any interest therein, or grant or operate the Property in a manner other than as intended by the manufacturer, or in violation of any insurance policy covering the Property, or remove or obligate nor condemn all or any part of it by Seller to the Property or take notice of Seller's security interest therein or any title only (but lastly ... )or otherwise on the Property, or permit the Property to become so affixed to realty as to become a fixture.

4. **Insurance.** Buyer shall have the Property insured against all risk of loss or damage from every cause whatsoever for which insurance is commercially available, in a manner acceptable to Seller. All such insurance shall be in force under policies of insurance of the kinds and the amounts acceptable to Seller and providing that losses shall be payable to Seller and naming the insurer to give Seller not less than thirty (30) days written notice of the effective date of any alteration in any such policy. All such insurance policies shall otherwise be in form and substance and with companies satisfactory to Seller. Buyer shall deliver such insurance policies to Seller, or shall furnish to Seller such other evidence of insurance as Seller may from time to

time request. The proceeds of such insurance shall be applied, at the option of Seller, to replacement, restoration or repair of any Property which is lost, stolen, damaged or destroyed or to payment of the obligations of Buyer hereunder. Buyer hereby irrevocably appoints Seller as attorney-in-fact, which appointment is coupled with an interest, to make claims for, receive and execute and endorse all documents, checks, or drafts received in payment of any loss under any such policy of insurance. If Buyer fails to procure or maintain such insurance, Seller shall have the right, but shall not be obligated, to obtain and maintain such insurance, and reimburse Seller for the cost thereof.

5. **Covenants Regarding Location of Property.** Buyer will not remove any of the Property from the location at which installed or otherwise change the location of any of the Property without written consent of Seller in each instance. EACH SIGNATORY HERETO WILL BE LIABLE TO SELLER FOR ANY ALL LOSS OR DAMAGE SUSTAINED BY SELLER AS ANY CHANGE IN LOCATION OF THE PROPERTY WITHOUT THE PRIOR WRITTEN SELLER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY DAMAGE AS A LOSS OF PERFECTION OF SELLER'S OR ACC'S SECURITY INTEREST IN THE PROPERTY.

6. **Default.** The occurrence of any of the following shall constitute an Event of Default by Buyer in the payment, when due or payable of the purchase price of the Property or limited or ... thereon; (b) any breach of Buyer of any representation, warranty or agreement (other than as to payment) set forth in this Agreement or any other agreement between Buyer and Seller or any representation, warranty or covenant by Buyer or Seller in writing by operation of law or otherwise, which breach is not cured within thirty (30) day following notice thereof by Seller to Buyer; (c) the issuance or entry of an injunction or attachment against Buyer, the Property or any other property of Buyer; (d) any notice of such sale or intended sale by Buyer; (e) the appointment of a receiver of Buyer or of the conditions or liquidating agents, the closing of a competition or extension to creditors or an assignment for the benefit of creditors or the commencement of any proceedings in reorganization, dissolution or liquidation under any bankruptcy or other laws relating to debtors, to the extent that any of the foregoing is by, for, on behalf of or with respect to insolvency of Buyer, the suspension, termination, discharge or unenforceability of exceeded in favor of Seller with respect to any of the obligations secured hereby or the condition or affairs financial or otherwise of Buyer which in the good faith determination of impairs Seller's security or increase its risk.

7. **Remedies on Default.** Upon the occurrence of an Event of Default, or at any time thereafter, Seller may at its option exercise any or all of the following rights and remedies. In addition to any other rights or remedies provided under this Agreement, Seller shall have all of the remedies of a secured party under the Uniform Commercial Code as in effect in any jurisdiction in which enforcement hereof is sought; the Seller may, at its option, accelerate and declare the entire indebtedness secured hereby to be immediately due and payable; (b) Seller shall have the right to enter upon the premises where any of the Property is located and to take immediate possession of and to render any of the Property inoperable in place by removal of its pertinent indebtedness total Buyer and for title purpose Seller may, with or without judicial process and at the option and expense of Buyer, repossess the Property, take it into and to the premises where situated, and may be moved and stored, and sell or otherwise dispose of the Property upon the premises where situated, or remove the Property for the purpose of preparing for or conducting the sale and may sell or otherwise dispose of the Property on Seller's premises or elsewhere; (d) Seller shall be entitled to require Buyer to assemble the Property and make it available to Seller at a place to be designated by Seller and which is reasonably convenient to both parties; (e) Seller shall have the right, without notice to or demand upon Buyer and without advertisement or legal process, sell or otherwise dispose of the Property at public or private sale as Seller deems appropriate, and Buyer shall be liable to Seller for and shall immediately pay any amount of any deficiency.

8. **Application of Proceeds.** The net proceeds realized upon any liquidation or disposition of the Property, after deduction for the expense of retaking, holding, preparing for sale or lease, and the disposal, and all reasonable attorney's fees and legal expenses incurred by Seller in enforcing or exercising any of its rights or remedies under this Agreement, shall be applied in satisfaction of the obligations of Buyer secured under this Agreement in such order as Seller may deem appropriate by Seller. Any surplus of such proceeds shall be paid to the person or party entitled thereto, and the Buyer shall be liable to Seller for and shall immediately pay any amount of any deficiency.

9. **Buyer's Waiver.** Except to the extent limited by law, Buyer hereby grants Seller, immediately upon or obtaining hereunder, advertisement of any sale or otherwise disposition of its rights and remedies, advertisement of any sale or otherwise disposition hereof, as may be required by law. To the fullest extent permitted by law, Buyer waives all protest, notice of acceptance of this Agreement or other action taken in reliance hereon, demands and notices of any description.

10. **Financing Statements, Fixture filings and further assurances.** Buyer hereby makes execute and file financing statements authenticated records, and fixture filings at any time to any of the Property, in each case without Buyer's signature to the extent permitted by Seller's request. Buyer shall execute one or more financing statements, fixture filings statements or other filings pursuant to the Uniform Commercial Code to form satisfactory to Seller and take any and all steps required by Seller to maintain perfection of the security interest granted hereunder, or to fully assure to Seller its rights under this Agreement.

## C. Assignment

1. **Assignment to Amada Capital Corporation.** Unless otherwise agreed by the parties, Seller may at any time assign this Agreement and its rights hereunder, in whole or in part to ACC. Buyer hereby waives any right to assert against ACC any claims, defenses or offsets of any nature against Seller which Buyer hereby expressly agrees not to assert any such claims or offsets against ACC.

2. **Assignment by Buyer.** Buyer may not assign, delegate or transfer any of its rights, or under this Agreement to any third party without the prior written consent of Seller.

## D. Miscellaneous

1. The order of application of Buyer payments is at the discretion of Seller. Seller may apply and all of a Buyer's payment to any outstanding balances owing by Seller.

2. **Notices.** All notices, demands or consents required or permitted to be given under shall be in writing and shall be deemed effective upon delivery if delivered personally or after mailing if sent by first class United States mail, postage prepaid, addressed to the address set forth herein or to such other address as shall be given by either party to the other.

3. **Waiver, Amendment or Modification.** No waiver, amendment or modification of any provision hereof or of any right or remedy hereunder shall be effective unless in writing and signed by Seller. No failure by Seller to exercise, and no delay by Seller in exercising, any remedy granted hereunder shall operate as a waiver of any such right, power or remedy. Any right or remedy of Seller on any one occasion shall not be construed as a bar to or right or remedy on any future occasion. All rights and remedies of Seller are separate and the exercise of any right or remedy shall not limit or prejudice the exercise of any other remedy.

4. **Court Jurisdiction.** Any controversy, claim, action or dispute arising out of or in connection with this Agreement will be subject to the laws of the State of California and the parties hereto matters being adjudicated in the jurisdiction of California.

5. **Attorneys' Fees.** In the event any arbitration or judicial action or proceeding is instituted by any parties relating to this Agreement or in the event either party seeks relief from the of 11 U.S.C. Section 362 for any successors and/or thereof, then the party to whose benefit award shall be given or any relief shall be granted or judgment shall be entered shall recover from the other party all costs and expenses (including attorneys' fees) incurred in any proceeding and any award therefrom.

6. **Severability.** In the event any provision or portion of any provision of this Agreement by a court of competent jurisdiction to be unenforceable or invalid, the remaining provisions thereof shall remain in full force and effect.

7. **Entire Agreement.** Notwithstanding any purchase order submitted by Buyer which on the facing page hereof or attached hereto, this Agreement constitutes the entire agreement between Buyer and Seller pertaining to the subject matter hereof. Any and all prior agreements or understandings between relating to the parties pertaining to the subject hereof are expressly superseded and cancelled by this Agreement.

8. **Time is of the Essence.** Except as to the provisions of this Agreement relating to price and shipping delays, time is of the essence with respect to each of the terms, conditions and covenants of this Agreement.

9. **Binding Effect.** Subject to Part C of this Agreement, this Agreement shall be binding and shall inure to the benefit of the parties and their legal representatives, successors and assigns.

10. **Headings.** Headings contained in this Agreement are for purposes of convenience only and not part of this Agreement.

RECEIVED
SECRETARY OF STATE
UNIFORM COMM CODE DIV.

2006 JUL 27 PM 4:30

EXHIBIT
GROUP
H

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
ELSIE HORST

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA  90621

UCU102/27/06:05:4450:
SOSIL 14:11  11190731 FS
20.00 MO

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| PRECISION  AMERICAN METALS, LLC | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE AMADA TOOL GRINDER, MODEL TOGUIII, COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
PRECISION  AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

RECEIVED
UCC STATE OF
UNIFORM COMM CODE DIV.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2006 JUN 27 PM 4: 30

A. NAME & PHONE OF CONTACT AT FILER [optional]
ELSIE HORST

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621

UCU102/27/06:05:4453:
20.00 MO
SOSIL 14:11  11190774 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PRECISION  AMERICAN METALS, LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE AMADA SPOT WELDER, MODEL ID40ST, COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
PRECISION  AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

SECRETARY OF STATE
UNIFORM COMM CODE DIV.

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2006 JUL 27　PM 4: 30

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

ELSIE HORST

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621

UCU109/27/06:05:4455:
S05IC 14:11　11190790 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1050 KINGSLAND DRIVE | BATAVIA | | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION IL | 1g. ORGANIZATIONAL ID #, if any 01876643 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 7025 FIRESTONE BLVD | BUENA PARK | | CA | 90621 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ONE AMADA SOFTWARE PACKAGE COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

PRECISION AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

ELSIE HORST

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621

RECEIVED
UNIFORM COMM CODE DIV.

2006 JUL 27 PM 4: 30

UCU107/27/06:05:4452:
20.00 MO
SOSIL 14:11  11190766 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE AMADA INSPECTION MACHINE, MODEL FABRIVISION, COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

PRECISION AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

RECEIVED
SECRETARY OF STATE
UNIFORM COMM CODE DIV.

2006 JUL 27 PM 4:30

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
ELSIE HORST

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621
```

WCU107/27/06:05:4451:
20.00 MO
SOSIL 14:11  11190758 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ONE AMADA MANIPULATOR SYSTEM, MODEL MP1225NJ, COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
PRECISION AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

RECEIVED
SECRETARY OF STATE
UNIFORM COMM CODE DIV.

2006 NOV 27 PM 4:30

A. NAME & PHONE OF CONTACT AT FILER [optional]

ELSIE HORST

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621

UCCI07/27/06:05:4449:
20.00 MO
SOSIL 14:10  11190723 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| PRECISION AMERICAN METALS, LLC | | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | □ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| AMADA CAPITAL CORPORATION | | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE AMADA TURRET PUNCH PRESS, MODEL EM2510NT, WITH TOOLING PACKAGE, SCRAP CONVEYOR,  COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

PRECISION AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

SECRETARY OF STATE
UNIFORM COMM CODE DIV.

2006 NOV 27  PM 4: 30

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
ELSIE HORST

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

AMADA CAPITAL CORPORATION
7025 FIRESTONE BLVD
BUENA PARK, CA 90621

UCU107/27/06:05:4454:
20.00 MO
SOSIL 14:11  11190782 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | PRECISION AMERICAN METALS, LLC | | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1050 KINGSLAND DRIVE | BATAVIA | IL | 60510 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IL | 01876643 | NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | AMADA CAPITAL CORPORATION | | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7025 FIRESTONE BLVD | BUENA PARK | CA | 90621 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ONE AMADA ROBOTIC PRESS BRAKE, MODEL HDS1030NTR, WITH TOOLING PACKAGE, COMPLETE WITH ALL ATTACHMENTS NOW OWNED OR HEREAFTER ACQUIRED.

THE UNDERSIGNED HEREBY GRANTS THE SECURITY INTEREST IN THE ABOVE REFERENCED EQUIPMENT TO SECURE PAYMENT OF ITS FULL PURCHASE PRICE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

PRECISION AMERICAN METALS, LLC

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

EXHIBIT I

# Precision American Metals, LLC
## Payment History

### SUMMARY

| | 14744 TOGUIII | 14561 ID40ST | 14738 APS | 14550 FABRIVISION | 14742 MB1225NJ | 14740 EM2610NT | 14741 FBS1030NTR | Total |
|---|---|---|---|---|---|---|---|---|
| Contract No | CB00003 | CB00004 | CB00001 | CB00002 | CB00005 | CB00006 | CB00007 | |
| Model Type | TOGUIII | ID40ST | APS | FABRIVISION | MB1225NJ | EM2610NT | FBS1030NTR | |
| Serial No. | 99520200 | 40800298 | - | 6065523 | A1225239 | 25100720 | 1300124 | |
| Book Date | 8/31/2006 | 8/31/2006 | 4/5/2007 | 4/5/2007 | 4/5/2007 | 5/15/2007 | 5/15/2007 | |
| 1st Pmt | 10/1/2006 | 10/1/2006 | 5/15/2007 | 5/15/2007 | 5/15/2007 | 5/15/2007 | 5/15/2007 | |
| Ann Fnc'd | 17,280.00 | 25,600.00 | 71,904.00 | 53,600.00 | 96,800.00 | 304,656.00 | 534,400.00 | 1,104,240.00 |
| Term (mths) | 60 | 60 | 60 | 60 | 60 | 60 | 60 | |
| Mthly Pmt | 365.13 | 540.93 | 1519.33 | 1,132.57 | 2,045.38 | 6,437.38 | 11,291.87 | 23,332.59 |
| Mthly L/C | 18.26 | 27.05 | 75.97 | 56.63 | 102.27 | 321.87 | 564.59 | 1,166.63 |
| Interest Rate | 9.75% | 9.75% | 9.75% | 9.75% | 9.75% | 9.75% | 9.75% | |
| Int Factor | 0.00812500 | 0.00812500 | 0.00812500 | 0.00812500 | 0.00812500 | 0.00812500 | 0.00812500 | |
| Delay | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Pmts Made | 6 | 6 | 0 | 0 | 0 | 0 | 0 | |
| Pmts Remain | 60 | 60 | 60 | 60 | 60 | 60 | 60 | |
| Pmts Delq | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 |
| L/C @ RPR | 109.56 | 162.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2/1.86 |
| % Pmt to Tot | | | | | | | | |

### PAYMENT RECORD

| | TOGUIII - Tool Grinder CB00003 | | | ID40ST - Spotwelder CB00004 | | | APS CB00001 | | | FABRIVISION CB00002 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Princ | Int | Pmt | Princ | Int | Pmt | Princ | Int | Pmt | Princ | Int | Pmt |
| Sep-06 | 17,280.00 | | | 25,600.00 | | | | | | | | |
| Oct-06 | 17,420.40 | 140.40 | 0.00 | 25,808.00 | 208.00 | 0.00 | | | | | | |
| Nov-06 | 17,561.94 | 141.54 | 0.00 | 26,017.69 | 209.69 | 0.00 | | | | | | |
| Dec-06 | 17,704.63 | 142.69 | 0.00 | 26,229.08 | 211.39 | 0.00 | | | | | | |
| Jan-07 | 17,848.48 | 143.85 | 0.00 | 26,442.20 | 213.11 | 0.00 | | | | | | |
| Feb-07 | 17,993.50 | 145.02 | 0.00 | 26,657.04 | 214.84 | 0.00 | | | | | | |
| Mar-07 | 18,139.70 | 146.20 | 0.00 | 26,873.63 | 216.59 | 0.00 | | | | | | |
| Apr-07 | 18,287.08 | 147.39 | 0.00 | 27,091.97 | 218.35 | 0.00 | 71,904.00 | | | 53,600.00 | | |
| May-07 | 18,435.67 | 148.58 | 0.00 | 27,312.10 | 220.12 | 0.00 | 72,488.22 | 584.22 | 0.00 | 54,035.50 | 435.50 | 0.00 |
| Jun-07 | 18,585.46 | 149.79 | 0.00 | 27,534.01 | 221.91 | 0.00 | 73,077.19 | 588.97 | 0.00 | 54,474.54 | 439.04 | 0.00 |
| Jul-07 | 18,736.46 | 151.01 | 0.00 | 27,757.72 | 223.71 | 0.00 | 73,670.94 | 593.75 | 0.00 | 54,917.14 | 442.61 | 0.00 |
| Aug-07 | 18,888.70 | 152.23 | 0.00 | 27,983.25 | 225.53 | 0.00 | 74,269.52 | 598.58 | 0.00 | 55,363.35 | 446.20 | 0.00 |
| Sep-07 | 19,042.17 | 153.47 | 0.00 | 28,210.62 | 227.36 | 0.00 | 74,872.96 | 603.44 | 0.00 | 55,813.17 | 449.83 | 0.00 |
| Oct-07 | 19,196.88 | 154.72 | 0.00 | 28,439.83 | 229.21 | 0.00 | 75,481.30 | 608.34 | 0.00 | 56,266.66 | 453.48 | 0.00 |
| Nov-07 | 19,352.86 | 155.97 | 0.00 | 28,670.90 | 231.07 | 0.00 | 76,094.58 | 613.29 | 0.00 | 56,723.82 | 457.17 | 0.00 |

NOTE: Contracts Repurchased by Amada America, Inc. 3/31/2007

| Month | MP1225NJ CB000003 Princ | Int | Pmt | EM2510NT CB000004 Princ | Int | Pmt | HDS1930NTR CB000003 Princ | Int | Pmt |
|---|---|---|---|---|---|---|---|---|---|
| Mar-07 | 96,800.00 | | | 304,656.00 | | | 534,400.00 | | |
| Apr-07 | 97,586.50 | 786.50 | | 307,131.33 | 2,475.33 | | 538,742.00 | 4,342.00 | |
| May-07 | 98,379.39 | 792.89 | | 309,626.77 | 2,495.44 | | 543,119.28 | 4,377.28 | |
| Jun-07 | 99,178.72 | 799.33 | | 312,142.49 | 2,515.72 | | 547,532.12 | 4,412.84 | |
| Jul-07 | 99,984.55 | 805.83 | | 314,678.65 | 2,536.16 | | 551,980.82 | 4,448.70 | |
| Aug-07 | 100,796.92 | 812.37 | | 317,235.41 | 2,556.76 | | 556,465.67 | 4,484.84 | |
| Sep-07 | 101,615.90 | 818.98 | | 319,812.95 | 2,577.54 | | 560,986.95 | 4,521.28 | |
| Oct-07 | 102,441.53 | 825.63 | 0.00 | 322,411.43 | 2,598.48 | 0.00 | 565,544.97 | 4,558.02 | 0.00 |
| Nov-07 | | | 0.00 | | | 0.00 | | | 0.00 |

## SUMMARY TOTALS

| Month | Princ | Interest | Payment | Late/Charge | Aggregate I/C Amount Due | Gross Due Princ & I/C Amount Due |
|---|---|---|---|---|---|---|
| Sep-06 | 42,880.00 | | 0.00 | 45.30 | 45.30 | 42,880.00 |
| Oct-06 | 43,228.60 | 348.40 | 0.00 | 45.30 | 90.60 | 43,273.70 |
| Nov-06 | 43,579.63 | 351.23 | 0.00 | 45.30 | 135.90 | 43,670.23 |
| Dec-06 | 43,933.72 | 354.08 | 0.00 | 45.30 | 181.20 | 44,069.62 |
| Jan-07 | 44,290.68 | 356.96 | 0.00 | 45.30 | 226.50 | 44,471.88 |
| Feb-07 | 44,650.54 | 359.86 | 0.00 | 45.30 | 271.80 | 44,877.04 |
| Mar-07 | 45,013.32 | 362.79 | 0.00 | 45.30 | 317.10 | 45,285.12 |
| Apr-07 | 1,106,739.06 | 365.73 | 0.00 | 1,166.63 | 1,483.73 | 1,107,056.16 |
| May-07 | 1,115,731.31 | 8,992.25 | 0.00 | 1,166.63 | 2,650.36 | 1,117,215.04 |
| Jun-07 | 1,124,796.63 | 9,065.32 | 0.00 | 1,166.63 | 3,816.99 | 1,127,446.89 |
| Jul-07 | 1,133,935.60 | 9,138.97 | 0.00 | 1,166.63 | 4,983.62 | 1,137,752.59 |
| Aug-07 | 1,143,148.83 | 9,213.23 | 0.00 | 1,166.63 | 6,150.25 | 1,148,132.45 |
| Sep-07 | 1,152,436.91 | 9,288.08 | 0.00 | 1,166.63 | 7,316.88 | 1,158,587.16 |
| Oct-07 | 1,161,800.46 | 9,363.55 | 0.00 | 1,166.63 | 8,483.51 | 1,169,117.34 |
| Nov-07 | 1,171,240.09 | 9,439.63 | 0.00 | 1,166.63 | | 1,179,723.60 |

55 WEST MONROE STREET, SUITE 1700, CHICAGO   40103 60605

TELEPHONE: 312-251-9600

FACSIMILE: 312-251-9601

EMAIL: MPCONNELLY@CRMLAW.COM

<div style="text-align: right;">CONNELLY ROBERTS & McGIVNEY LLC</div>

MATTHEW P. CONNELLY

<div style="text-align: center;">July 20, 2007</div>

John Mazurek, President
Precision American Metals, LLC
1050 Kingsland Dr.
Batavia, Illinois 60510

Re:   **Amada America, Inc.  Agreements in Default:**
      **Payment Necessary to Avoid Proceedings**

Dear Mr. Mazurek:

Please be advised that I represent Amada America, Inc. with regard to several agreements upon which Precision Metals owes Amada and has yet to make a payment.   The agreements are as follows:

a.   Agreement Number 14744, to purchase a ToguIII Tool Grinder from Amada for the purchase price of $21,600.00.  There is a present outstanding amount of $18,919.06 on this Agreement.

b.   Agreement Number 14546, dated July 20, 2006, to purchase a Spot Welder from Amada for the purchase price of $32,000.00. There is a present outstanding amount of $28,028.22 on this Agreement.

c.   Agreement Number 14738, to purchase an APS Software Package from Amada for the purchase price of $89,880.00. There is a present outstanding amount of $73,898.85 on this Agreement.

d.   Agreement Number 14550, to purchase a Fabrivision Inspection Machine from Amada for the purchase price of $64,700.00.   There is a present outstanding amount of $55,087.03 on this Agreement.

e.   Agreement Number 14742, to purchase a Manipulator System from Amada for the purchase price of $122,000.00. There is a present outstanding amount of $99,485.53 on this Agreement.

f.   Agreement Number 14740, to purchase a Turret Punch Press, with Tooling Package and Scrap Conveyor, from Amada for the purchase price of $307,235.00. There is a present outstanding amount of $313,108.10 on this Agreement.

<div style="text-align: right; border: 2px solid black; display: inline-block;">
EXHIBIT

tabbies&reg;   J
</div>

g.  Agreement Number 14741, to purchase a Robotic Press Brake with Tooling Package from Amada for the total purchase price of $605,000.00. There is a present outstanding amount of $549,225.89 on this Agreement.

Although you agreed to remit monthly payments beginning on October 1, 2006 for Agreements number 14744 and 14546, and on May 15, 2007 for Agreements number 14738, 14550, 14742, 14740 and 14741, no payment has yet been received on any of these Agreements. As such, Amada has exercised its right under Section B, Paragraph 7(b) of the Agreements and has accelerated all amounts owed by Precision, making the entire amount owed under each agreement due immediately.

Further, please note that Amada reserves its right under Section B, Paragraph 7(c) of the Agreements to take immediate possession of all Property that is the subject of any of the Agreements, namely, the ToguIII Tool Grinder; the Spot Welder, model number ID40ST; the APS software package; the Fabrivision Inspection Machine; the Manipulator System, model number MP1225NJ; the Turret Punch Press with Tooling Package and Scrap Conveyor, model number EM2510NT; and the Robotic Press Brake with Tooling Package, model number HDS1020NTR.

Pursuant to Section A, Paragraph 4 of the Terms and Conditions of each Agreement, a late fee has been and will continue to be assessed against each Agreement at a rate of 5% of the amount due. Furthermore, the interest on each agreement is still accruing at a rate of 9.75% per month. Accordingly, each month you put off repaying the total amount due to Amada, the amount you owe will continue to increase exponentially.

Your original principle amount due was $1,104,240.00. As of the date of this correspondence, however, the total amount you owe Amada, including any and all late fees and accrued interest, is $1,137,752.68. If you refuse to remit payment of the entire amount you currently owe to Amada America, Inc. within five days of receipt of this letter, we will have no choice but to bring legal action against you.

Please contact me as soon as possible to discuss payment of the total amount you owe.

Very truly yours,

Matthew P. Connelly

MAT:tre

c.c.:  Dave Kehrli
b.c.c.:  Timothy Eavenson

# AMADA AMERICA, INC.

AGREEMENT NUMBER

AMADA AMERICA, INC., 7025 Firestone Blvd., Buena Park, CA 90621

## EQUIPMENT PURCHASE AND SECURITY AGREEMENT
### (SUPPLEMENTAL DOCUMENTS)

| BUYER'S NAME | AMADA AMERICA, INC. CUSTOMER NUMBER |
|---|---|
| Precision American Metals, LLC | 29899 |

### UNCONDITIONAL CONTINUING GUARANTY

FOR VALUABLE CONSIDERATION RECEIVED, and to induce AMADA AMERICA, INC. ("Seller") to enter into an Equipment Purchase and Security Agreement ("Agreement"), other agreements and instruments, and any amendments thereto, with Buyer and to perform the obligations thereunder in connection with the sale of certain equipment and other personal property to Buyer on an installment payment basis, the undersigned (whether there be one or more than one, "Guarantors") agrees as follows:

1. Guarantors unconditionally guaranty and promise to pay to Seller, on demand, any indebtedness of Buyer to Seller not paid when due. Where Guarantors include more than one party their liability hereunder shall be joint and several. The word "indebtedness" includes without limitation any advance, debt, obligation or liability of Buyer to Seller, whether heretofore or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated and determined or undetermined, whether recovery upon such indebtedness may be or hereafter become barred by any statute of limitations and whether such indebtedness may be or hereafter become unenforceable. Without limiting the generality of the foregoing, the indebtedness guaranteed hereunder includes all indebtedness of Buyer to Seller arising out of any equipment purchase, installment sale, security or other agreement relating to the purchase of the Property by Buyer, including without limitation late charges, interest at the highest rate permitted by law, reasonable expense of retaking, holding, preparing for sale, and selling the Property, and deficiency balance remaining after any sale or other disposition of the Property by Seller after default by Buyer, and all other reasonable expenses and costs incurred by Seller, including attorney's fees.

2. Guarantors authorize Seller, without notice or demand and without affecting the liability of Guarantors hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment or change the terms of Buyer's indebtedness to Seller or any part thereof; (b) take and hold security for the payment of this Unconditional Continuing Guaranty or the indebtedness guaranteed hereunder, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Seller in its sole discretion may determine; and (d) release or substitute any one or more Guarantors. Seller may without notice assign this Unconditional Continuing Guaranty, in whole or in part, in which case this Unconditional Continuing Guaranty shall inure to the benefit of Seller's assigns and successors in interest.

3. Guarantors waive any right to require Seller to (a) proceed against Buyer or any other party; (b) proceed against or exhaust any security of Buyer held by Seller or any other party; or (c) pursue any other remedy in Seller's power whatsoever. Guarantors waive to the fullest extent permitted by law any defense arising by reason of any disability or other defense of Buyer, or by reason of the cessation from any cause whatsoever of the liability of Buyer. Until all indebtedness of Buyer to Seller shall have been paid in full, Guarantors shall have no right of subrogation and waive any right to enforce any remedy which Seller now has or may hereafter have against Buyer, and waive any benefit of, and any right to participate in, any security now or hereafter held by Seller. Guarantors waive all presentments, demands, performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of, and notices of the existence, creation or incurring of new or additional indebtedness of this Unconditional Continuing Guaranty.

4. Any indebtedness of Buyer now or hereafter held by Guarantors is hereby subordinated to the indebtedness of Buyer to Seller. Such indebtedness of Buyer to Guarantors, if Seller so requests, shall be collected, enforced and received by Guarantors as trustees for Seller and be paid over to Seller on account of the indebtedness of Buyer to Seller without reducing or affecting in any manner the liability of Guarantors under the other provisions of this Unconditional Continuing Guaranty.

5. If any of Guarantors is a corporation or partnership, it represents and warrants that the execution of this Unconditional Continuing Guaranty has been authorized by all necessary corporate or partnership action.

6. Guarantors agree to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by Seller in the enforcement of this Unconditional Continuing Guaranty. This Unconditional Continuing Guaranty shall be binding upon the heirs, executors, administrators and assigns of Guarantors. Any amounts due hereunder not paid when due shall accrue interest at the highest rate permitted by law.

7. This Unconditional Continuing Guaranty shall be governed by and construed under the laws of the State of California. Guarantors consent to the non-exclusive jurisdiction of the state and federal courts located in Los Angeles, California and agree that Seller may maintain an action in any such court to collect any amounts payable by Guarantors to Seller hereunder.

IN WITNESS WHEREOF, the undersigned Guarantors have executed this Unconditional Continuing Guaranty

X _at 1050 KINGSLAND DR._, as of _July 20_, 19 _2006_.

A. INDIVIDUAL GUARANTORS

X SIGNATURE _John M. Mazurek_        HOME ADDRESS _7N295 WHISPERING TRAIL, ST. CHARLES, IL 60175_
PRINT NAME _JOHN M. MAZUREK_

X SIGNATURE _Pamela Mazurek_        HOME ADDRESS _7N295 WHISPERING TRAIL, ST. CHARLES, IL 60175_
PRINT NAME _PAMELA F. MAZUREK_

B. PARTNERSHIP GUARANTORS

NAME OF PARTNERSHIP

GENERAL PARTNER'S SIGNATURE

PRINT NAME

C. CORPORATE GUARANTORS

NAME OF CORPORATION

SIGNATURE

PRINT NAME AND TITLE

ATTACH ADDITIONAL SHEETS IF NECESSARY

CORPORATE AND PARTNERSHIP GUARANTORS MUST COMPLETE THE CERTIFICATE OF RESOLUTION OR THE CERTIFICATE OF AUTHORIZATION, AS APPROPRIATE.

EXHIBIT
K

55 WEST MONROE STREET, SUITE 1700, CHICAGO, I    IS 60603
TELEPHONE: 312-251-9600
FACSIMILE: 312-251-9601
EMAIL: MPCONNELLY@CRMLAW.COM

MATTHEW P. CONNELLY

CONNELLY ROBERTS & McGIVNEY LLC

July 20, 2007

John Mazurek, Guarantor
7N295 Whispering Trail Road
St. Charles, Illinois 60175

Re:    **Amada America, Inc.  Agreements in Default:**
       <u>Payment Necessary to Avoid Proceedings</u>

Dear Mr. Mazurek:

Please be advised that I represent Amada America, Inc. with regard to several agreements upon which Precision Metals owes Amada and has yet to make a payment.  As Guarantor of these agreements, you are responsible for their repayment.   The agreements are as follows:

a.   Agreement Number 14744, to purchase a ToguIII Tool Grinder from Amada for the purchase price of $21,600.00.  There is a present outstanding amount of $18,919.06 on this Agreement.

b.   Agreement Number 14546, dated July 20, 2006, to purchase a Spot Welder from Amada for the purchase price of $32,000.00. There is a present outstanding amount of $28,028.22 on this Agreement.

c.   Agreement Number 14738, to purchase an APS Software Package from Amada for the purchase price of $89,880.00. There is a present outstanding amount of $73,898.85 on this Agreement.

d.   Agreement Number 14550, to purchase a Fabrivision Inspection Machine from Amada for the purchase price of $64,700.00.   There is a present outstanding amount of $55,087.03 on this Agreement.

e.   Agreement Number 14742, to purchase a Manipulator System from Amada for the purchase price of $122,000.00. There is a present outstanding amount of $99,485.53 on this Agreement.

f.   Agreement Number 14740, to purchase a Turret Punch Press, with Tooling Package and Scrap Conveyor, from Amada for the purchase price of $307,235.00. There is a present outstanding amount of $313,108.10 on this Agreement.

g.   Agreement Number 14741, to purchase a Robotic Press Brake with Tooling Package from Amada for the total purchase price of $605,000.00. There is a present outstanding amount of $549,225.89 on this Agreement.

**EXHIBIT**

tables'

L

Although Precision agreed to remit monthly payments beginning on October 1, 2006 for Agreements number 14744 and 14546, and on May 15, 2007 for Agreements number 14738, 14550, 14742, 14740 and 14741, no payment has yet been received on any of these Agreements. As such, Amada has exercised its right under Section B, Paragraph 7(b) of the Agreements and has accelerated all amounts owed by Precision, making the entire amount owed under each agreement due immediately.

Pursuant to the Unconditional Continuing Guaranty you signed, you individually and personally promised to pay Amada, on demand, any of Precision's indebtedness to Amada not paid when due. Amada hereby demands that you pay the full amount owed to it by Precision immediately.

Please note, pursuant to Section A, Paragraph 4 of the Terms and Conditions of each Agreement, a late fee has been and will continue to be assessed against each Agreement at a rate of 5% of the amount due. Furthermore, the interest on each agreement is still accruing at a rate of 9.75% per month. Accordingly, each month you put off repaying the total amount due to Amada, the amount you owe as Guarantor will continue to increase exponentially.

Precision's original, principle amount due was $1,104,240.00. As of the date of this correspondence, however, the total amount Precision owes Amada, including any and all late fees and accrued interest, is $1,137,752.68. If you refuse to remit payment of this entire amount currently owed to Amada America, Inc. within five days of receipt of this letter, we will have no choice but to bring legal action against you.

Please contact me as soon as possible to discuss payment of the total amount you owe.

Very truly yours,

Matthew P. Connelly

MAT:tre

c.c.:    Dave Kehrli
b.c.c.:  Timothy Eavenson

55 WEST MONROE STREET, SUITE 1700, CHICAGO, II    IIS 60603
TELEPHONE: 312-251-9600
FACSIMILE: 312-251-9601
EMAIL: MPCONNELLY@CRMLAW.COM

MATTHEW P. CONNELLY

CONNELLY ROBERTS & McGIVNEY LLC

July 20, 2007

Pamela Mazurek, Guarantor
7N295 Whispering Trail Road
St. Charles, Illinois 60175

Re:  **Amada America, Inc.  Agreements in Default:**
     **Payment Necessary to Avoid Proceedings**

Dear Mrs. Mazurek:

Please be advised that I represent Amada America, Inc. with regard to several agreements upon which Precision Metals owes Amada and has yet to make a payment.  As Guarantor of these agreements, you are responsible for their repayment.   The agreements are as follows:

a.  Agreement Number 14744, to purchase a ToguIII Tool Grinder from Amada for the purchase price of $21,600.00.  There is a present outstanding amount of $18,919.06 on this Agreement.

b.  Agreement Number 14546, dated July 20, 2006, to purchase a Spot Welder from Amada for the purchase price of $32,000.00. There is a present outstanding amount of $28,028.22 on this Agreement.

c.  Agreement Number 14738, to purchase an APS Software Package from Amada for the purchase price of $89,880.00. There is a present outstanding amount of $73,898.85 on this Agreement.

d.  Agreement Number 14550, to purchase a Fabrivision Inspection Machine from Amada for the purchase price of $64,700.00.   There is a present outstanding amount of $55,087.03 on this Agreement.

e.  Agreement Number 14742, to purchase a Manipulator System from Amada for the purchase price of $122,000.00. There is a present outstanding amount of $99,485.53 on this Agreement.

f.  Agreement Number 14740, to purchase a Turret Punch Press, with Tooling Package and Scrap Conveyor, from Amada for the purchase price of $307,235.00. There is a present outstanding amount of $313,108.10 on this Agreement.

g.  Agreement Number 14741, to purchase a Robotic Press Brake with Tooling Package from Amada for the total purchase price of $605,000.00. There is a present outstanding amount of $549,225.89 on this Agreement.

**EXHIBIT**

tabbies®

M

Although Precision agreed to remit monthly payments beginning on October 1, 2006 for Agreements number 14744 and 14546, and on May 15, 2007 for Agreements number 14738, 14550, 14742, 14740 and 14741, no payment has yet been received on any of these Agreements. As such, Amada has exercised its right under Section B, Paragraph 7(b) of the Agreements and has accelerated all amounts owed by Precision, making the entire amount owed under each agreement due immediately.

Pursuant to the Unconditional Continuing Guaranty you signed, you individually and personally promised to pay Amada, on demand, any of Precision's indebtedness to Amada not paid when due. Amada hereby demands that you pay the full amount owed to it by Precision immediately.

Please note, pursuant to Section A, Paragraph 4 of the Terms and Conditions of each Agreement, a late fee has been and will continue to be assessed against each Agreement at a rate of 5% of the amount due. Furthermore, the interest on each agreement is still accruing at a rate of 9.75% per month. Accordingly, each month you put off repaying the total amount due to Amada, the amount you owe as Guarantor will continue to increase exponentially.

Precision's original, principle amount due was $1,104,240.00. As of the date of this correspondence, however, the total amount Precision owes Amada, including any and all late fees and accrued interest, is $1,137,752.68. If you refuse to remit payment of this entire amount currently owed to Amada America, Inc. within five days of receipt of this letter, we will have no choice but to bring legal action against you.

Please contact me as soon as possible to discuss payment of the total amount you owe.

Very truly yours,

Matthew P. Connelly

MAT:tre

c.c.:   Dave Kehrli
b.c.c.: Timothy Eavenson

**CIVIL COVER SHEET**    RECEIVED

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

JUL 24 2007

| (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| AMADA AMERICA, INC. | PRECISION AMERICAN METALS, LLC an Illinois corporation, JOHN M. MAZUREK and JEFFREY ST. MAZUREK, individually |

07 C 4177

| (b) County of Residence of First Listed Plaintiff   Orange County, California | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

JUDGE MORAN

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Matthew Connelly, Connelly Roberts & McGivney, LLC 55 W. Monroe St., Suite 1700, Chicago, Illinois, 60603 312/251-9600 | MAGISTRATE JUDGE KEY |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (excl. vet.)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**
*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Inj.

*PERSONAL INJURY*
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability
*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Security/Commodity/Exch.
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 ADA—Employment
- ☐ 446 ADA — Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

Breach of contract action based on Defendants' failure to pay for goods delivered and accepted.

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**IX. This case**  ☑ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
|  |  |

## Settlement Agreement and Release

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into as of the 5th day of December, 2007 (the "Effective Date"), by and between Amada America, Inc., a California Corporation ("Amada"), Precision American Metals, LLC, an Illinois limited liability Corporation ("Precision") and John M. Mazurek and Pamela F. Mazurek, individually (the "Mazurek's"). Collectively, Precision and the Mazurek's are referred to as the "Defendants". Amada, Precision and the Mazurek's are jointly referred to as the "Parties".

### Parties and Recitals:

1.     Amada is a corporation specializing in the manufacture and sale of machine tools to the fabrication industry, with its headquarters and principle place of business at 7025 Firestone Blvd. in the city of Buena Park, California.

2.     Precision is an Illinois limited liability corporation, with its headquarters and principle place of business at 1050 Kingsland Dr.. in the village of Batavia, Kane County, Illinois.

3.     The Mazurek's are residents of the village of St. Charles, Kane County, Illinois and are principals of Precision.

4.     In July of 2006, Precision executed seven separate Equipment Purchase and Security Agreements (the "Purchase Agreements"), for the purpose of procuring a number of specialized machines from Amada. The Purchase Agreements were numbered as follows:

  a.  Agreement Number 14744, to purchase a Tool Grinder from Amada for the total cash purchase price of $21,600.00;

  b.  Agreement Number 14546, to purchase a Spot Welder from Amada for the total cash purchase price of $32,000.00;

  c.  Agreement Number 14738, to purchase a Software Package from Amada for the total cash purchase price of $89,880.00;

  d.  Agreement Number 14550, to purchase an Inspection Machine from Amada for the total cash purchase price of $66,500.00;

  e.  Agreement Number 14742, to purchase a Manipulator System from Amada for the total cash purchase price of $121,000.00;

  f.  Agreement Number 14740, to purchase a Turret Punch Press, with Tooling Package and Scrap Conveyor, from Amada for the total cash purchase price of $380,820.00;

1

EXHIBIT

B

tabbies'

g. Agreement Number 14741, to purchase a Robotic Press Brake with Tooling Package from Amada for the total cash purchase price of $668,000.00.

5. The total value of the Purchase Agreements, less cash down payments and plus interest accrued thereon, is $1,399,955.20.

6. The Mazurek's individually executed a document entitled "Unconditional Continuing Guaranty". That Guaranty provides, in pertinent part, that the Mazurek's individually guaranty and promise to pay to Amada, on demand, any indebtedness of Precision.

7. None of the Purchase Agreements have been paid by Precision, or the Mazurek's. Amada has performed its obligations, in their entirety, under the terms of the Purchase Agreements.

8. As a result of Precision and the Mazurek's failure to tender payment under the Purchase Agreements, a dispute has arisen between Amada, Precision and the Mazurek's. Amada initiated a suit in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *Amada America, Inc., v. Precision American Metals, LLC and John M. Mazurek and Pamela F. Mazurek*, Case no. 07 C 4177 (the "Lawsuit"). The Lawsuit seeks damages for the Defendants' failure to tender payment under the Purchase Agreements, as well prejudgment interest, costs and attorneys' fees. The claims of Amada in the Lawsuit are more fully detailed and defined within its Complaint, which is attached as Exhibit A. The Purchase Agreements and the Mazureks' executed "Unconditional Continuing Guaranty" documents are also attached as exhibits to the Complaint.

### Settlement Agreement:

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

9. Amada agrees to accept the sum of $1,469,952.96 (the "Settlement Payment") in full satisfaction of all amounts which Amada claims to be owed to it by Defendants for the goods sold to them as alleged in the Lawsuit. This amount includes the current value of the Purchase Agreements plus prejudgment interest at the rate of 5%. Defendants shall be jointly and severally liable for the full satisfaction of the Settlement Payment.

10. The Settlement Payment shall be payable as follows:

a. On November 28, 2007 Defendants tendered to Amada payment in the amount of $39,820.34 (the "First Installment"). Amada acknowledges receipt of the First Installment;

2

b.    The remaining amount due under this Settlement Agreement, or $1,430,132.62 shall be paid in monthly installments of $23,835.54 (the "Monthly Installments"), due on the 15th of each month and beginning on December 15, 2007. The Monthly Installments shall continue until the Settlement Payment is satisfied in full.

11.    Upon receipt of the first Monthly Installment, Amada shall dismiss Defendants, with prejudice and without costs, from the Lawsuit.

Remedies:

12.    If, for any reason, Defendants fail to make any payment enumerated in this Settlement Agreement within 7 (Seven) days of when such payment(s) become due (the "Event of Default"), Amada may initiate a proceeding against Defendants under this Settlement Agreement, under its common law or statutory rights, or both. Or, in the alternative, and at the sole discretion of Amada, in the Event of Default, Defendants consent to the entry of a Confession of Judgment Order, without notice, the form and content of such Confession of Judgment Order shall be consistent with the Confession of Judgment Order that is attached as Exhibit B. Such Confession of Judgment Order shall be filed in the United States District Court for the Northern District of Illinois, Eastern Division and shall be enforceable against Defendants jointly and severally. The Parties consent to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, for the purposes of the enforcement of this Settlement Agreement and for the entry of the Confession of Judgment Order.

13.    For purposes of the Confession of Judgment Order, Defendants appoint the law firm of Connelly Roberts & McGivney LLC, or its designee, as attorneys in fact for Defendants to enter the Confession of Judgment Order and for the preparation of any motion required for the entry of such Order. For purposes of this Agreement, Defendants waive any conflict which may arise with Connelly Roberts & McGivney LLC with respect to the entry of the Confession of Judgment Order, in addition to waiving any appeal rights which may arise resulting from the entry of the Confession of Judgment Order. Defendants also waive and forego any affirmative defenses, bars to enforcement, claims of estoppel, or any other matter which could act as a defense to the proceeding relating to the entry of the Confession of Judgment Order and/or any matters relating to the enforcement of any such Confession of Judgment Order, or supplemental proceedings thereon.

14.    Upon an Event of Default, Defendants shall be liable to Amada for the Settlement Payment, in full, plus attorneys' fees and costs, less any amounts paid by Defendants pursuant to this Settlement Agreement. At the time of the entry of the Confession of Judgment Order, Connelly Roberts & McGivney LLC shall provide the Court with an affidavit stating the amounts previously paid by Defendants pursuant to this Agreement and the attorneys' fees incurred by Amada.

3

**Release:**

15.    In consideration of the Settlement Payment, the Parties hereby absolutely, irrevocably and unconditionally forever release and discharge each other and, where applicable, their parents, subsidiaries, affiliates and partners from and against any and all claims, liabilities, actions, causes of action, demands, judgments or damages of any and all kind or nature, whatsoever, that the Parties have or may have in the future, whether known or unknown, suspected or unsuspected, at law, in equity, or otherwise, against each other that have, or may, arise out of the Purchase Agreements, or are currently detailed in the Lawsuit. Notwithstanding anything contained in this Settlement Agreement to the contrary, this Settlement Agreement shall in no way affect the rights of Amada stated herein, nor shall it affect the rights of Amada to enforce the terms of this Settlement Agreement, also stated herein.

16.    The Parties make the following representations and warranties to the other Parties hereto:

a.    *Authority to execute Settlement Agreement*:  It is duly and validly organized and existing and in good standing under the laws of the state of its Organization and has full power and authority to execute, deliver and perform this Settlement Agreement and the documents and instruments to be executed and delivered by it pursuant to this Settlement Agreement. The execution, delivery and performance of this Settlement Agreement by it and each document and instrument to be executed and delivered by it pursuant to this Settlement Agreement have been duly authorized by all required action of the partners, shareholders and directors thereof and other persons whose consent may be required;

b.    *No Duress*:    The Parties have executed and delivered, or shall execute and deliver, this Settlement Agreement and the other documents and instruments to be executed pursuant hereto, freely and voluntarily, with full knowledge and with the advice of independent legal counsel and without duress;

c.    *Signatory*:    The person(s) executing this Settlement Agreement, whether individually, or on behalf of any Party enumerated herein, including each documents and instrument to be executed and delivered by such person, has the authority to do so on behalf of such party;

d.    *Independent Investigation*:    The Parties have made such investigation of the facts pertaining to this Settlement Agreement, and to all of the matters pertaining thereto, as they deem necessary;

e.    *No Transfers*: The Parties have not conveyed, pledged, assigned or

4

otherwise transferred any claim which they might have against any other Party hereto.

17.     There are no other agreements or representations, either oral or written, express or implied, relating to the subject matter hereof, that are not embodied in this Settlement Agreement. This Settlement Agreement represents a complete integration of all prior and contemporaneous agreements and understandings of the Parties relating to such subject matter, and that any such agreements, to the extent that they may exist, are hereby superseded by this Settlement Agreement. This Settlement Agreement and any other document referenced herein shall be interpreted in accordance with their fair meanings and shall not be more or less favorably construed with respect to any of the Parties.

18.     This Settlement Agreement shall be binding upon the Parties and their respective successors and assigns and shall inure to the benefit of the Parties, and their respective successors and assigns. No other person or entity shall be, or is intended to be, a beneficiary under this Settlement Agreement.

19.     This Settlement Agreement may be executed in counterparts and all of said counterparts, taken together, will be deemed to constitute one and the same instrument.

20.     Any dispute which may arise under this Settlement Agreement shall be governed by the laws of the State of Illinois.

Executed as of the Effective Date.

By:     Amada America, Inc.

Name:   _D. Kehrli__, C.C.O._

Title:  _Chief Compliance Officer_

By:     Precision American Metals, LLC

Name:   _____

Title:  _PRESIDENT_

By:     John M. Mazurek, individually

Name:   _____

5

By:    Pamela F. Mazurek, individually

Name: _Pamel F Mazurel_

*122000166*
02/06/2008
6426066397

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.

RETURN REASON-A
NOT SUFFICIENT
FUNDS

[071002861] 00000001725936 02/04/2008

Suspense

P A

RETURN REASON-A
NOT SUFFICIENT FUNDS

1581

DATE 1-28-08          2-2566-710

PAY TO THE ORDER OF _____          $ 23,835.54

Twenty three thousand eight hundred thirty five & 54/100 DOLLARS

HARRIS.          Harris N A

FOR Installment          _____

⑈"001581" ⑆:071025661⑆: 4801364764"          ⑉"0002383954⑉"

⑈"001581" ⑆:071025661⑆:          4801364764"          ⑉"0002383954⑉"


EXHIBIT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMADA AMERICA, INC., a California )
corporation, )
  )
       Plaintiff, )
  )
     v. )       No. 07 C 4177
  )
PRECISION AMERICAN METALS, LLC., )
An Illinois Limited Liability Corporation, and )
JOHN M. MAZUREK and PAMELA F. )
MAZUREK, individually, )
  )
       Defendants. )

## COMPLAINT

Plaintiff, Amada America, Inc. ("Amada"), by its attorneys, Connelly Roberts & McGivney LLC, for its Complaint against Defendants, Precision American Metals, LLC., an Illinois Corporation ("Precision"), John M. Mazurek, an individual, and Pamela F. Mazurek, an individual (collectively "the Parties"), states as follows:

### Jurisdiction

1.     Amada is a corporation with its headquarters and principle place of business in the State of California. Precision is a limited liability corporation with its headquarters and principle place of business in the State of Illinois. Upon information and belief, John and Pamela Mazurek are residents of the State of Illinois.

2.     The amount in controversy, exclusive of interest and costs, is in excess of the sum specified by 28 U.S.C. §1332.

3.     Defendants have waived any objection to this Court's jurisdiction over this matter. Further, Defendants consented to the jurisdiction of this Court for the purpose of


EXHIBIT

enforcing a Settlement and Release Agreement between the Parties and for the entry of a Confession of Judgment Order as outlined in the following facts.

### Parties

4.    Amada is a corporation specializing in the manufacture and sale of machine tools to the fabrication industry, with its headquarters and principle place of business at 7025 Firestone Blvd., Buena Park, California.

5.    Precision is an Illinois limited liability corporation, with its headquarters and principle place of business at 1050 Kingsland Drive, Batavia, Kane County, Illinois.

6.    John M. Mazurek and Pamela F. Mazurek are residents of the village of St. Charles, Kane County, Illinois.

### Facts

7.    In July of 2006, John M. Mazurek, as President of Precision, executed seven separate Equipment Purchase and Security Agreements ("the Agreements"), for the purpose of procuring a number of specialized machines from Amada.

8.    The Agreements were individually and personally guaranteed by John M. Mazurek and Pamela F. Mazurek.

9.    Defendants subsequently breached the terms of the Agreements by failing to tender payment for the purchased items.

10.    On July 24, 2007, Amada filed a Complaint alleging breach of contract against Precision and the Mazureks, individually, for their failure to tender payment under the terms of the Agreements. (A copy of Amada's Complaint is attached as Exhibit "A").

2

11.    On December 5, 2007, Defendants and Amada entered into a Settlement and Release Agreement. This Settlement and Release Agreement was signed by Precision and the Mazureks individually. (A copy of the Settlement and Release Agreement is attached hereto as Exhibit "B").

12.    In the Settlement and Release Agreement, Amada agreed to accept the payment of $1,469,952.96 to satisfy the debt owed by Defendants. Defendants agreed that they were jointly and severally liable for the full satisfaction of the Settlement and Release Agreement. (¶ 9, Ex. B).

13.    Paragraph 10 of the Settlement and Release Agreement established the following payment structure:

"The Settlement Payment shall be payable as follows:

   a.    On November 28, 2007 Defendants tendered to Amada payment in the amount of $39,820.34 (the "First Installment"). Amada acknowledges receipt of the First Installment;

   b.    The remaining amount due under this Settlement Agreement, or $1,430,132.62 shall be paid in monthly installments of $23,835.54 (the "Monthly Installments"), due on the 15th of each month and beginning on December 15, 2007. The Monthly Installments shall continue until the Settlement Payment is satisfied in full." (¶ 10, Ex. B)

14.    Defendants issued a check for the December 2007 installment on December 17, 2007, in the amount of $23,836.54, which was accepted and cashed by Amada.

15.    The Amada Complaint was dismissed with prejudice on January 8, 2008 in accordance with the terms of the Settlement and Release Agreement.

16.    Defendants issued a check for the January 2008 installment on January 28, 2008. Upon deposit of the check, Amada was informed that there was insufficient

funding for the January installment check. (A copy of the insufficient January 28, 2008 check is attached as Exhibit "C").

17.    Defendants did not tender payment for the February 2008 monthly installment.

18.    Paragraph 12 of the Settlement and Release Agreement states:

"[I]f, for any reason, Defendants fail to make any payment enumerated in this Settlement Agreement within 7 (Seven) days of when such payment(s) become due (the "Event of Default"), Amada may initiate a proceeding against Defendants under this Settlement Agreement, under its common law or statutory rights, or both."
(¶ 12, Ex. B).

19.    In paragraph 12 of the Settlement and Release Agreement, Defendants consented to the entry of a Confession of Judgment Order similar to the Order attached to the Settlement and Release Agreement as Exhibit B. (see Ex. B to Ex. B hereto).

20.    Simultaneously with this Complaint, Amada has filed a Motion to Enter the Confession of Judgment Order. (A copy of said Motion is attached hereto as Exhibit "D").

21.    Paragraph 13 of the Settlement Agreement states:

"For purposes of the Confession of Judgment Order, Defendants appoint the law firm of Connelly Roberts & McGivney LLC, or its designee, as attorneys in fact for Defendants to enter the Confession of Judgment Order and for the preparation of any motion required for the entry of such Order. For purposes of this Agreement, Defendants waive any conflict which may arise with Connelly Roberts & McGivney LLC with respect to the entry of the Confession of Judgment Order, in addition to waiving any appeal rights which may arise resulting from the entry of the Confession of Judgment Order. Defendants also waive and forego any affirmative defenses, bars to enforcement, claims of estoppel, or any other matter which could act as a defense to the proceeding relating to the entry of the Confession of Judgment Order and/or any matters relating to the enforcement of any such Confession of Judgment Order, or supplemental proceedings thereon."
(¶ 13, Ex. B).

22.    Defendants are liable to Amada for the full Settlement Payment as well as attorney's fees and costs pursuant to paragraph 14 of the Settlement Agreement, which states:

> "Upon an Event of Default, Defendants shall be liable to Amada for the Settlement Payment, in full, plus attorneys' fees and costs, less any amounts paid by Defendants pursuant to this Settlement Agreement. At the time of the entry of the Confession of Judgment Order, Connelly Roberts & McGivney LLC shall provide the Court with an affidavit stating the amounts previously paid by Defendants pursuant to this Agreement and the attorneys' fees incurred by Amada."
> (¶ 14, Ex. B).

23.    Attached to Amada's Motion to Enter the Confession of Judgment Order is the Affidavit of Cory D. Anderson (the "Affidavit"), an attorney with Connelly Roberts & McGivney LLC, which states the amounts paid to Amada by Defendants, Defendants' outstanding Settlement balance and the attorney's fees and costs incurred by Amada to enforce the Settlement Agreement. (see Ex. A to Ex. D hereto).

24.    Amada has performed all of its obligations under the Settlement and Release Agreement by dismissing its suit against Defendants.

25.    Defendants breached their obligations pursuant to the Settlement and Release Agreement, and are in default of the same, by:

a)    Issuing an insufficient check for the January 2008 installment payment, and,

b)    Failing to tender payment for the February 2008 installment.

26.    Defendants owe Amada $1,406,296.08 under the terms of the Settlement and Release Agreement. (see Ex. A to Ex. D hereto). Moreover, Amada, per the terms of the Settlement and Release Agreement, is entitled to be reimbursed by Defendants for

5

their fees and costs associated with the enforcement of the Settlement and Release Agreement, totaling $7,150.00. (see Ex. A to Ex. D hereto).

WHEREFORE, Plaintiff, Amada America, Inc., respectfully requests that this Court:

1) Enter judgment for Amada America, Inc. and against Precision American Metals, LLC, John M. Mazurek and Pamela F. Mazurek, jointly and severally, in the amount of $1,413,446.08;

2) Or, in the alternative, for any other relief that this Court deems just.

Respectfully Submitted,

Amada America, Inc.,

By:/s/Cory D. Anderson_____
　　　　　One of its Attorneys

Matthew P. Connelly
Cory D. Anderson
Connelly Roberts & McGivney LLC
55 W. Monroe St., Suite 1700
Chicago, Illinois 60603
(312)251-9600

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AMADA AMERICA, INC., a California )
corporation, )
                                        )
            Plaintiff, )
                                        )
     v. )
                                          )
PRECISION AMERICAN METALS, LLC., )
An Illinois Limited Liability Corporation, and )
JOHN M. MAZUREK and PAMELA F. )
MAZUREK, individually, )
                                          )
            Defendants. )

**AFFIDAVIT OF CORY D. ANDERSON**

I, Cory D. Anderson, state:

1)     I am an attorney with the law firm of Connelly Roberts & McGivney LLC

       ("CRM"). I have personal knowledge of the matters recited in this

       Affidavit and, if called as a witness, I could competently testify thereto.

2)     I, along with CRM law clerks, paralegals and Matthew P. Connelly

       ("Connelly"), also an attorney with CRM, have represented Amada

       America, Inc. ("Amada") throughout the course of this litigation.

3)     I am personally familiar with the billing methods and practices of CRM.

       My hourly billing rate for this matter is $240.00. Connelly's hourly

       billing rate for this matter is $350.00. CRM's hourly billing rate for other

       CRM personnel working on this matter is $140.00.

4)     CRM began billing Amada for the research, preparation and presentation

       of Amada's Complaint for Defendants' breach of the Settlement



Agreement, Amada's Motion to Enter the Confession of Judgment Order, and the exhibits necessary for the same on February 12, 2008 (collectively the "Confession of Judgment Documents"). CRM concluded billing on the Confession of Judgment Documents on March 12, 2008.

5)   Between February 12, 2008 and March 12, 2008, CRM attorneys and law clerks billed a combined total of 31.3 hours towards the completion of the Confession of Judgment Documents. Invoices reflecting the specific dates and time allotments billed for such tasks can be tendered to the Court upon request.

6)   The total fees billed to Amada as a result of the 31.3 hours dedicated to the Confession of Judgment Documents by CRM, were $7,150.00. The fees generated by CRM personnel are reasonable and customary and were necessary for the preparation and presentation of the Confession of Judgment Documents. Amada is currently responsible for the $7,150.00.

7)   Amada agreed, by way of the Settlement Agreement with Defendants', to accept the payment of $1,469,952.96 (the "Settlement Payment") in satisfaction of the debt owed by Defendants. Defendants agreed to be jointly and severally liable for the Settlement Payment.

8)   Amada has received total payments of $63,656.88 from Defendants.

9)   The remaining Settlement Payment owed to Amada by Defendants, jointly and severally, is $1,406,296.08.

10)  The total amount owed to Amada by Defendants, jointly and severally, under the terms of the Settlement Agreement, is $1,413,446.08. This

2

amount constitutes the remaining amount owed to Amada by Defendants,

jointly and severally, under the terms of the Settlement Agreement, as well

as the fees generated by CRM for the preparation of the Confession of

Judgment Documents, for which Amada is now responsible.

11)    All of the statements made in the Confession of Judgment Documents, as

well as the exhibits thereto, are true and correct and this Affidavit is

submitted in support of the same.

By: _____

Cory D. Anderson

Attorney for Amada America, Inc.

Sworn to and subscribed before me this

24 th day of March, 2008

_____

Notary Public

CRAIG E. DONNELLY
MY COMMISSION EXPIRES
JANUARY 12, 2012
NOTARY PUBLIC
OFFICIAL SEAL
STATE OF ILLINOIS